**AFFIRM; Opinion Filed August 28, 2013.**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-13-00190-CV**
_____

**JULIE STULL AND JMJ PRODUCTIONS, Appellants**
**V.**
**GREG LAPLANT AND CHRIS KOLASKOS, Appellees**

**On Appeal from the County Court at Law No. 5**
**Dallas County, Texas**
**Trial Court Cause No. CC-12-00402-E**

## OPINION

Before Justices Francis, Evans, and Richter[1]
Opinion by Justice Evans

Julie Stull and JMJ Productions sued Greg LaPlant, Chris Kolaskos, and others for breach

of contract to provide entertainment services in Dallas, Texas. The trial court granted LaPlant

and Kolaskos's special appearance by which they challenged personal jurisdiction based on the

application of the fiduciary shield doctrine. In this interlocutory appeal, appellants contend the

trial court erred because the fiduciary shield doctrine does not apply to the exercise of specific

jurisdiction. We affirm the trial court's order.

### I. FACTUAL BACKGROUND

Appellees LaPlant and Kolaskos are California residents who are executives of RSP

Talent, Inc., which has its principal place of business in California. In their Second Amended

_____

[1] The Honorable Martin Richter, Retired Justice, sitting by assignment.

Petition, appellants alleged that they contracted with General Media Communications, Inc., aka Penthouse Promotions, to provide an "Official Penthouse Super Party" on the Friday and Saturday nights immediately preceding Super Bowl XLV on Sunday, February 6, 2011. The party was to be held at the Platinum Club in the American Airlines Center in Dallas, Texas. Appellants further pleaded that appellees and RSP contracted with GMCI to act as GMCI's agents in the performance of its agreement with appellants. Appellants asserted that appellees' conduct, as well as that of RSP and other defendants, breached the agreed terms of performance of the "Official Penthouse Super Party."

Appellees filed a special appearance supported by affidavits in which they testified they had no connection to Texas except in fulfilling the terms of RSP's contract with GMCI. Appellants' evidence in opposition to appellees' special appearance included the January 11, 2011 agreement between GMCI and RSP for RSP, as the talent provider, to arrange for individuals to act as hostesses for the event, appear for red carpet photos and interviews, and emcee the party. Schedule "A" to RSP's agreement with GMCI is a services order. Kolaskos signed both the agreement and the services order identifying RSP as the signing party and Kolaskos's capacity as agent for RSP. The only individual obligation on the part of either appellee in the agreement is a provision by which Kolaskos warranted that he was authorized to sign on behalf of RSP. Appellants also provided evidence of appellees' communications with persons in Texas, the wiring instructions for RSP's bank account, and trips appellees made to Texas pertaining to their work for RSP on the party. The trial court granted appellees' special appearance, and this interlocutory appeal followed.

## II. ANALYSIS

Appellants asserted in the trial court that appellees were subject to jurisdiction in Texas under both general and specific jurisdiction. On appeal, appellants have abandoned their general

jurisdiction argument and assert only two issues related to specific jurisdiction as the basis for appellees' amenability to jurisdiction in Texas. First, appellants contend that appellees' contacts with Texas in their representative capacities establish specific jurisdiction. Second, appellants assert the fiduciary shield doctrine does not apply to appellees' contacts with Texas because numerous cases state the doctrine is applicable only to the exercise of general jurisdiction, not specific jurisdiction. We treat appellants' issues together. After applying the relevant law to the facts and appellants' arguments, we conclude that appellants have not demonstrated that appellees are amenable to jurisdiction in Texas for the claims asserted.

### A. Standard of Review

We review de novo the trial court's ruling on a special appearance. TEX. R. CIV. P. 120a; *see Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). Where, as here, the trial court did not make findings of fact or conclusions of law, we infer all facts necessary to support the trial court's ruling. *Moki Mac*, 221 S.W.3d at 574.

### B. Personal Jurisdiction

A Texas court may exercise personal jurisdiction over a nonresident defendant under the Texas long-arm statute, which extends personal jurisdiction as far as the due process protections in the United States Constitution permit. *Id*. at 575. Due process limits every state to exercise jurisdiction only when a nonresident defendant (1) has sufficient minimum, purposeful contact with the state, and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *See id.* at 575; *see also BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction is established if the defendant's alleged liability arises out of or relates to the defendant's contacts with the forum

–3–

state. *Id.* at 789. In contrast, general jurisdiction is established if the defendant has had continuous and systematic contacts with the forum, regardless of whether the defendant's alleged liability arises from those contacts. *Moki Mac*, 221 S.W.3d at 575.

### C. *Special Appearance Procedure*

The plaintiff bears the initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Id.* at 574. To determine whether the plaintiff satisfied its burden, a court considers the allegations in the plaintiff's petition as well as its response to the defendant's special appearance. TEX. R. CIV. P. 120a(3); *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.–Dallas 2007, pet. denied). Once the plaintiff has pleaded sufficient jurisdictional allegations, a defendant who contests the trial court's exercise of personal jurisdiction bears the burden to negate all alleged bases of jurisdiction. *Flanagan*, 232 S.W.3d at 374.

The defendant can negate jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant negates jurisdiction on a factual basis by presenting evidence that he has no contacts with Texas, thus disproving the plaintiff's jurisdictional allegations. *See id.* If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court has personal jurisdiction over the nonresident defendant. *See id.*; *Alliance Royalties, LLC v. Booth*, 329 S.W.3d 117, 120 (Tex. App.—Dallas 2010, no pet.). A defendant negates the legal basis for jurisdiction if "the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Kelly*, 301 S.W.3d at 659. Dismissal of the lawsuit as to a

–4–

nonresident defendant is the proper ruling if the court determines there is not an adequate factual or legal basis for the exercise of jurisdiction.

In a special appearance, the defendant may challenge the capacity in which he has been sued if that capacity forms the basis of the plaintiff's contention that there are sufficient minimum contacts between the defendant and Texas to establish personal jurisdiction. *See Ennis v. Loiseau*, 164 S.W.3d 698, 705 (Tex. App.—Austin 2005, no pet.); *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex. App.—San Antonio 2004, no pet.) (nonresidents filed special appearance to assert that plaintiff's allegations were insufficient to establish jurisdiction over them individually because all contacts were made in corporate capacity). A long-standing principle of Texas law is that ordinarily a corporate agent is not personally liable in an action on a contract made by him for the benefit of his corporate principal. *See Dr. Salsbury's Labs. v. Bell*, 386 S.W.2d 341, 343 (Tex. Civ. App.—Dallas 1964, writ dism'd). Similarly, the fiduciary shield doctrine prevents the attribution to corporate agents of contacts with Texas resulting solely from transacting the corporate principal's business in the state. *See Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985) (explaining that "the fiduciary-shield doctrine . . . holds that an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation"). But a corporate agent can be held liable for committing a tort or wrong while engaged in the business of the corporate principal based on the agent's personal acts. *See id.*; *Hyman Farm Serv., Inc. v. Earth Oil & Gas Co., Inc.*, 920 S.W.2d 452, 455 (Tex. App.—Amarillo 1996, no writ). Accordingly, one frequently stated exception to the fiduciary shield doctrine[2] is that it does not protect an officer or employee of a business entity from liability for

---

[2] We note that some courts articulate the tort exception to the fiduciary shield doctrine in terms of not applying the doctrine at all. *See, e.g., Brown v. Gen. Brick Sales Co., Inc.*, 39 S.W.3d 291, 293, 300 (Tex. App.—Fort Worth 2001, no pet.) (in a suit against corporate agents for breach of contract, fraud, negligent misrepresentation, unfair

torts the individual is alleged to have committed while conducting the business of his employer because individuals are liable for the torts they commit. *See TexVa, Inc. v. Boone*, 300 S.W.3d 879, 889 (Tex. App.—Dallas 2009, pet. denied) (fiduciary shield doctrine "does not shield an officer or employee for their actions that are tortious or fraudulent"); *see generally State v. Mink*, 990 S.W.2d 779, 783 (Tex. App.—Austin 1999, pet. denied) ("an officer of a corporation is always primarily liable for his own torts, even though the principal is also liable for those actions"). Nor does the fiduciary shield doctrine protect an individual from the exercise of personal jurisdiction based on claims of piercing the corporate veil for contractual liability incurred by a business entity. *See Wolf v. Summers-Wood, L.P.*, 214 S.W.3d 783, 793 (Tex. App.—Dallas 2007, no pet.).

### D. Appellees' Amenability to Jurisdiction in Texas

In their special appearance, appellees challenged the capacity in which they were sued because the issue of their capacity formed the basis of appellants' contention that appellees have minimum contacts with Texas. The sufficiency of appellees' minimum contacts depends on whether the fiduciary shield doctrine applies to the exercise of specific jurisdiction. Appellees do not contest that their contacts with Texas pertaining to the performance of the contract would support the exercise of specific jurisdiction *if* they were one of the contracting parties. But, because they acted only as agents of the contracting party, they contend the fiduciary shield doctrine applies to preclude the exercise of jurisdiction over them.

---

competition, and misappropriation of proprietary information involving negotiations and performance in Texas, the court concluded, "we hold the trial court correctly refused to apply the fiduciary shield doctrine.").

Appellants have not invoked the tort or alter ego exceptions to the fiduciary shield doctrine because they pleaded neither.[3] Further, appellants effectively concede that all of appellees' contacts were solely in their capacities as corporate agents. They contend, however, that the fiduciary shield doctrine does not apply to the exercise of specific jurisdiction. We disagree.

The evidence submitted by both sides and appellants' pleaded allegations all involve specific instances of appellees' contacts with Texas in their capacities as executives of RSP and RSP's contract with GMCI to provide the "Official Penthouse Super Party." Appellants made only one specific allegation pertaining to appellees individually in their Second Amended Petition and this allegation combined appellees and their employer together: "Defendants, RSP Talent, Greg LaPlant, and Chris Kolaskos, acted as authorized agents and representatives of GMCI AKA Penthouse promotions." Otherwise, appellants merely alleged conduct by "Defendants" globally. In their response to appellees' special appearance, appellants acknowledged appellees' conduct was as executives of RSP with the exception of one allegation that appellants were responsible to pay appellees "personally $5,000.00 for their services on behalf of Penthouse." Appellants claimed in an affidavit that this was a brokerage fee.

---

[3] In their reply brief, appellants argue for the first time that the alter ego exception to the fiduciary shield doctrine applies. Appellants did not plead alter ego and did not mention, refer to, or argue it in response to the special appearance in the trial court or in their opening appellate brief in this court. In order to preserve a complaint for our review, the action or omission which is alleged as error or abuse of discretion on behalf of the trial court must have been the basis of a timely request, objection, or motion that specified the action that the trial court was requested to take, or to forbear from taking, and an adverse ruling must have been obtained. TEX. R. APP. P. 33.1(a); *Holland v. Wal–Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex.1999). In addition, rule 38.1(i) of the Texas Rules of Appellate Procedure requires that an appellant's brief include "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Failure to cite applicable authority or provide substantive analysis waives an issue on appeal. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). Lastly, rule 38.3 permits a reply brief to address "any matter in the appellee's brief." TEX. R. APP. P. 38.3. Thus, appellants may not use their reply brief to raise a new issue. *See Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pet. denied). For each of these reasons, appellants' alter ego argument has not been presented or preserved as error for our review.

In their special appearance, appellees provided affidavits and argument that they are residents of California and are both executives of RSP, which has its principal place of business in California. Both appellees negated a plethora of typical connections to the forum, negated any personal contractual obligation to perform RSP's contract, and explained that each of their specific contacts with Texas was done solely as an executive of RSP and not in their personal capacity. Both appellees averred that they did not personally receive any services of value from appellants. Kolaskos signed RSP's agreement with GMCI and the services order attached to the agreement solely in his capacity as an executive of RSP.

Appellants allege that appellees committed the acts on which appellants' breach of contract claim is based, thus giving rise to specific jurisdiction over appellees. Appellants then argue that appellees may not use the fiduciary shield doctrine to defeat jurisdiction because the doctrine does not apply to specific jurisdiction. Appellants cite several opinions that articulate the tort exception to the fiduciary shield doctrine. These cases also add a broad statement in dicta that appears to exclude the fiduciary shield doctrine from applying in a specific jurisdictional analysis. We have examined each opinion cited by appellants and each involves the tort exception to the fiduciary shield doctrine; none turns on the broad statement on which appellants rely.[4] The language cited by appellants has been correctly characterized in our view

---

[4] Each case appellants cite for support involve specific jurisdiction based on tort: *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.) ("Courts that have applied the fiduciary shield doctrine, however, have limited its application to attempts to exercise *general* jurisdiction over a nonresident defendant."); *Crithfield v. Boothe*, 343 S.W.3d 274, 287 (Tex. App.—Dallas 2011, no pet.) ("A corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally liable."); *Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.) ("Even if the fiduciary shield were adopted by this Court, it would not protect Ennis from the exercise of *specific* jurisdiction. Courts recognize that a corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct, directed at the forum state, for which he may be held personally liable."); *Tuscano v. Osterberg*, 82 S.W.3d 457, 467 (Tex. App.—El Paso 2002, no pet.) (no broad statement in opinion regarding personal jurisdiction for alleged fraud and intentional infliction of emotional distress); *Shapolsky v. Brewton*, 56 S.W.3d 120, 132–33 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (no broad statement in opinion regarding specific jurisdiction based on tort).

as "something of an overstatement." *Tyson v. Austin Eating Disorders Partners, LLC*, No. A-13-CA-180-SS, 2013 WL 3197641, at *3 (W.D. Tex. June 21, 2013). And the perceived conflict over applying the doctrine to assertions of specific jurisdiction is "illusory." *Id.* Indeed, appellants have not cited, and we have not found, any opinion where a court determined that the fiduciary shield doctrine did not apply to the corporate agent's contacts solely because the plaintiff framed its jurisdictional argument as specific jurisdiction. To the contrary, several federal courts and one state court have applied the fiduciary shield doctrine to determine they had no specific jurisdiction over non-resident defendants in a breach of contract action when the defendants did not sign the contract in their personal capacity but only as agents of their corporate principal. *See Organic Metals v. Aquasium Techs., Ltd.*, No. CIV.3:03-CV-3062-H, 2004 WL 718960 at *4 (N.D. Tex. Apr. 2, 2004) (citing authorities in the Northern District of Texas); *21st Century Fin. Servs., Inc. v. Mandelbaum*, No. A-10-CA-803 LY, 2011 WL 3844209, at *7-8 (W.D. Tex. Aug. 30, 2011) ("Because the Individual Defendants' were merely acting in their corporate capacities on behalf of Manchester Bank in their dealings with Plaintiff, the fiduciary shield doctrine prevents the Court from exercising specific jurisdiction over them."); *Tang v. Garcia*, No. 13-06-00367-CV, 2007 WL 2199269, at *1 (Tex. App.—Corpus Christi Aug. 2, 2007, pet. denied) (mem. op.). We agree with the courts that have applied the fiduciary shield doctrine in cases involving specific jurisdiction for the following reasons.

The very nature of the exception to the fiduciary shield doctrine lends the *exception* susceptible to the exercise of specific jurisdiction. The exception arises when a plaintiff claims the agent personally committed a tort and at least some of the agent's tortious conduct involved contacts with Texas. As stated above, the fiduciary shield doctrine does not protect officers from liability for their own torts. *Tyson*, 2013 WL 3197641, at *3. But the application of the fiduciary shield doctrine is determined by whether or not the corporate agent can be held

personally liable under applicable law, not by whether the jurisdictional theory espoused by the plaintiff is general or specific. To hold that the fiduciary shield doctrine never applies to assertions of specific jurisdiction would be arbitrary and ignores the rationale for the doctrine.

The fiduciary shield doctrine derives from the long-standing principle of contractual liability that, "[i]f a person signs a contract in her corporate capacity, she is not individually a party to the contract." *Wolf,* 214 S.W.3d at 792. Thus, it follows that, "[w]hen an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent." *Mort Keshin & Co., Inc. v. Houston Chronicle Pub. Co.,* 992 S.W.2d 642, 647 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Stated more generally, "[w]hen an agent arrives in Texas to represent his principal, only the principal is doing business in Texas." *Hotel Partners v. Craig,* 993 S.W.2d 116, 121 (Tex. App.—Dallas 1994, pet. denied). Therefore, even if a plaintiff asserts only specific jurisdiction regarding an alleged breach of contract against a non-resident agent of the contracting party, the agent's contacts with Texas in furtherance of the principal's business are attributable only to the employer, not to the agent, because the fiduciary shield doctrine applies.

The fact that appellees' actions were committed solely in their capacity as executives of RSP was essentially proven by appellants' own evidence. This case is similar to the facts presented in *Tang*. *See Tang*, 2007 WL 2199269, at \*5. In *Tang*, the plaintiff pleaded that the corporate lawyers acted as "the agents for" their employer and the plaintiff's evidence at the special appearance hearing included affidavit testimony that the corporate lawyers "were acting on behalf of" their employer. *Id*. The plaintiff did not bring forward any facts regarding the acts of the corporate lawyers individually in furtherance of the claims against them that involved contacts with Texas. *Id*. Accordingly, the court in *Tang* determined the fiduciary shield doctrine applied, reversed the trial court, and sustained the special appearance.

–10–

Here, appellants admit appellees' contacts with Texas were solely in their capacity as executives of RSP. The only "personal" contact alleged by appellants in support of specific jurisdiction was an agreement to pay appellees a $5,000 direct commission or brokerage fee as part of the transaction. Even if there were such an agreement, appellants pleaded they agreed to pay appellees "personally $5,000.00 *for their services on behalf of* [GMCI[5]]." Thus, even appellants recognize this alleged payment was for work appellees did in their representative capacity for RSP. Furthermore, whether the fee was a personal benefit to the appellees was a disputed fact. Absent findings of fact and conclusions of law, we construe all controverted evidence in support of the trial court's ruling. *Moki Mac*, 221 S.W.3d at 574. Accordingly, we construe this controversy as resolved by the trial court—solely for the purposes of ruling on the special appearance—that appellees benefitted from an agreement for a $5,000 commission only in their capacity as executives of RSP. For these reasons, the allegation of a $5,000 payment is not sufficient to support exercising specific jurisdiction over appellees.

All the pleadings and evidence support the trial court's implicit finding that all of appellees' contacts with Texas were in their capacities as executives of RSP, and the fiduciary shield doctrine applies to preclude the exercise of specific jurisdiction.

### III. CONCLUSION

We conclude the fiduciary shield doctrine applies even though appellants' only asserted theory of personal jurisdiction over appellees in Texas is specific jurisdiction. Under the doctrine, all of appellees' contacts with Texas in this case are attributable only to RSP because all of appellees' actions were solely in their representative capacity. *See Organic Metals*, 2004 WL 718960 at *4; *21st Century Fin. Servs., Inc.*, 2011 WL 3844209, at *7-8. By showing that

---

[5] In their response to the special appearance, appellants introduced the undefined term, "Penthouse/GMCI," which they shortened to "Penthouse" in the statement quoted in the text. We understand "Penthouse" to mean "GMCI" in the quoted statement.

all of their contacts with the state were attributable to RSP, and not to them in their individual capacities, appellees negated the legal basis on which appellants urged the trial court to exercise jurisdiction over them. *See Kelly*, 301 S.W.3d at 659. We conclude the trial court did not err when it granted appellees' special appearance.

We overrule appellants' issues and affirm the trial court's order.

/David Evans
DAVID EVANS
JUSTICE

130190F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JULIE STULL AND JMJ PRODUCTIONS, Appellants

No. 05-13-00190-CV     V.

GREG LAPLANT AND CHRIS KOLASKOS, Appellees

On Appeal from the County Court at Law No. 5, Dallas County, Texas
Trial Court Cause No. CC-12-00402-E.
Opinion delivered by Justice Evans.
Justices Francis and Richter participating.

In accordance with this Court's opinion of this date, the order of the trial court granting the special appearance of GREG LAPLANT and CHRIS KOLASKOS is **AFFIRMED**.

It is **ORDERED** that appellees GREG LAPLANT and CHRIS KOLASKOS recover their costs of this appeal from appellants JULIE STULL AND JMJ PRODUCTIONS.

Judgment entered this 28th day of August, 2013.

/David Evans/
DAVID EVANS
JUSTICE