# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON REHEARING

## NO. 03-13-00762-CV

**Fakhrealam Atiq, Appellant**

**v.**

**CoTechno Group, Inc., Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
### NO. 11-1626, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment dated July 9, 2015, and substitute the following opinion and judgment in their place.

After Fiberex Corporation sued CoTechno Group, Inc. for claims arising from a contract dispute, CoTechno filed a third-party petition against one of Fiberex's officers, Fakhrealam Atiq, a Canadian resident. Atiq then filed a special appearance, which the trial court denied. In this interlocutory appeal, Atiq contends that the trial court erred in denying his special appearance because, according to Atiq, any and all actions he took were solely in his capacity as a corporate officer. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(7); Tex. R. Civ. P. 120a. We conclude that the undisputed allegations and the evidence before us are insufficient to support

personal jurisdiction over Atiq in his individual capacity. Therefore, we reverse the trial court's order and render judgment dismissing CoTechno's claims against Atiq for want of personal jurisdiction.

## BACKGROUND

Atiq, a Canadian citizen residing in Edmonton, Alberta, is chairman and CEO of Fiberex, a Canadian corporation. According to Atiq, Fiberex "primarily offers goods and services related to the manufacture and marketing of glass fiber reinforcements for composites." Historically, Fiberex supplied its product to CoTechno, a manufacturer of glass fiber woven products with facilities located in San Marcos, Texas.

In August 2009, a dispute arose over a certain shipment of materials to CoTechno from Fiberex. In short, CoTechno claimed that Fiberex had provided defective materials, and Fiberex claimed that CoTechno owed $360,000 for its purchase of the materials. Ultimately, in an effort to settle their dispute, the companies entered into a Future Business Agreement. In part, the Agreement provided that (1) a new entity, C-Fabrics, would initially serve as a wholly owned subsidiary of Fiberex; (2) CoTechno would channel some of its business through C-Fabrics; and (3) a portion of C-Fabric's revenue would be devoted to paying down the "debt" claimed by Fiberex, in an amount negotiated by the parties. Finally, the companies agreed that once the debt was satisfied, ownership of C-Fabrics would be transferred to CoTechno for $1.

The companies operated under the Agreement for several years, and the negotiated debt amount was eventually paid off. On August 16, 2011, Fiberex sent written notice of its

intention to terminate the Future Business Agreement.[1]  Fiberex then filed suit in Hays County, Texas, claiming ownership of certain property—inventory, materials, and leased equipment—located at CoTechno's warehouse and obtained a temporary restraining order allowing Fiberex to remove the property from the facility without interference from CoTechno.  In response, CoTechno filed counterclaims against Fiberex and later a third-party petition, joining Atiq as a third-party defendant.

With respect to Atiq, CoTechno alleged that Atiq had personally engaged in a variety of torts and that he had breached contractual obligations under the Future Business Agreement. Specifically, CoTechno claimed that Atiq and Fiberex converted fiberglass material that was the property of CoTechno and C-Fabrics by obtaining a temporary restraining order permitting the removal of the material.  CoTechno also claimed that Atiq was a party to the Future Business Agreement in his personal capacity and that he and Fiberex had fraudulently entered into the Agreement with CoTechno and then breached the Agreement by failing to transfer C-Fabrics. Similarly, CoTechno claimed that the Agreement created a partnership between Fiberex, CoTechno, and Atiq and that Atiq breached his fiduciary duties as a partner by engaging in self-dealing.  Finally, CoTechno alleged that Atiq was individually liable on all claims because he was acting as the alter ego of both Fiberex and C-Fabrics.

In response, Atiq filed a special appearance under Rule 120a of the Texas Rules of Civil Procedure, asserting that the court lacked personal jurisdiction over him.  *See* Tex. R. Civ. P.

---

[1]  Although the parties agree that the "debt" was eventually satisfied, the parties dispute whether CoTechno's payment of $1 on August 18, 2011, was timely and whether the payment triggered Fiberex's duty to transfer ownership of C-Fabrics.

3

120a. Atiq attached an affidavit to his special appearance that he later introduced as an exhibit at the special-appearance hearing. In relevant part, Atiq swore to the following:

1. I am a citizen of Canada residing in Edmonton, Alberta. . . .

2. I am not and have not ever been a resident of the State of Texas. I own no property in Texas, do not have a bank account in Texas, nor do I have a mailing address or place of business in Texas. I do not engage in business in Texas in my individual capacity and am not a party to any agreement performable within the State.

. . .

[3.] In my capacity as Chairman and CEO of Fiberex, I traveled to San Marcos, Texas, once in 2009 as part of a routine customer visit to meet with the principals of CoTechno. Aside from this single trip to Hays County, my only other travels to Texas have been to Houston approximately three times in the last two years, in my capacity as an officer of a different Canadian Corporation, to visit customers of that different Canadian entity which is wholly unrelated to this litigation.

[4.] My interactions with CoTechno and its principals were all undertaken in my capacity as an officer of Fiberex in the furtherance of the business of Fiberex, and not in my individual capacity. I was not directly involved in negotiating the Future Business Agreement ("FBA") with CoTechno. The majority of the FBA was negotiated and prepared by two other Fiberex officers at the time, Peter Bonyun and Mark Williams. However, in my capacity as Chairman and CEO of Fiberex, I did review and provide comments to the agreement during the negotiation process. Ultimately, as Chairman of Fiberex, I approved and signed the FBA on behalf of Fiberex.

[5.] The FBA recognizes a separate corporation, CoTechno Fabrics Inc. ("C-Fabrics"), a wholly owned subsidiary of Fiberex, as a party to the agreement. C-Fabrics was incorporated under the laws of the State of California in 2009. I executed the Articles of Incorporation for C-Fabrics on August 5, 2009, and afterwards forwarded the executed Articles of Incorporation to Mr. Roger Bhatia, Fiberex's California counsel, for recording in the State of California. C-Fabrics has not maintained a place of business in Texas nor had any Texas employees at any time. Nor has C-Fabrics ever maintained a Texas mailing

4

address or a registered agent within the State of Texas for service of process. I signed the FBA in Canada as President of C-Fabrics on August 17, 2009.

The trial court later held a hearing at which the parties submitted evidence, including Atiq's affidavit. The trial court denied the special appearance, and this appeal followed.

## BACKGROUND LAW

Texas courts may assert jurisdiction over a nonresident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *see* Tex. Civ. Prac. & Rem. Code § 17.042 (Texas long-arm statute). The Texas long-arm statute allows Texas courts to exercise personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Consequently, "the requirements of the Texas long-arm statute are satisfied if an assertion of jurisdiction accords with federal due-process limitations." *Moki Mac River Expeditions*, 221 S.W.3d at 575.

The exercise of jurisdiction over a nonresident comports with federal due process when (1) the nonresident has minimum contacts with the forum state, and (2) asserting jurisdiction complies with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "A defendant establishes minimum contacts with a state when [he] 'purposefully avails [himself] of the privilege of conducting activities within the forum state, thus

5

invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

The requirement of "purposeful availment" encompasses three considerations. First, a court must consider only the defendant's contacts with the forum, not the unilateral activity of another party or a third person. *Moki Mac River Expeditions*, 221 S.W.3d at 575 (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784-85 (Tex. 2005)). In addition, the contacts on which jurisdiction is based must be purposeful. *Id*. If the defendant's Texas contacts are random, fortuitous, or attenuated, the defendant is not subject to jurisdiction in Texas courts. *Id*. Finally, the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction of Texas. *Id*. The defendant's activities, whether they consist of direct acts within Texas or conduct outside of Texas, "must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A nonresident defendant's contacts with the forum state can give rise to either specific or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. General jurisdiction exists when the defendant has made continuous and systematic contacts, such that the forum may exercise jurisdiction over the defendant even if the alleged liability does not arise from or relate to those contacts. *Id*. at 796. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2853-54 (2011). In contrast, specific jurisdiction exists only if the alleged liability

6

arises out of or is related to the defendant's contact with the forum. *Moki Mac River Expeditions*, 221 S.W.3d at 576. When specific jurisdiction is alleged, the focus of the minimum-contacts analysis is the relationship among the defendant, the forum, and the litigation. *Id*. at 575-76 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). If the court concludes that a nonresident defendant has minimum contacts with Texas by purposefully availing himself of the privilege of conducting activities here, the court must then address whether the defendant's alleged liability arises out of or is related to those contacts. *See id*. at 579 ("For specific-jurisdiction purposes, purposeful availment has no jurisdictional relevance unless the defendant's liability arises from or relates to the forum contacts.").

## STANDARD OF REVIEW

Under the Texas long-arm statute, the plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software*, 83 S.W.3d at 794. When this initial burden is met, the burden shifts to the nonresident to negate all bases of personal jurisdiction asserted by the plaintiff. *Id*. A defendant may negate jurisdiction on a legal basis by showing that even if the plaintiff's allegations are true, they do not establish jurisdiction. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant may also negate jurisdiction on a factual basis by introducing evidence that rebuts the allegations in the pleadings. *Id*. Only relevant jurisdictional facts, rather than the ultimate merits of the case, should be considered in deciding the issue of jurisdiction. *Moncrief Oil Int'l*, 414 S.W.3d at 156.

7

When, as in this case, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software*, 83 S.W.3d at 795. When the appellate record includes the reporter's record and clerk's record, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id*. The ultimate determination of whether a court has personal jurisdiction over a defendant is a question of law that we review de novo. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150. Because specific jurisdiction requires that the claim arise out of or result from the defendant's forum contacts, we analyze whether jurisdictional contacts support specific jurisdiction on a claim-by-claim basis unless the claims arise from the same forum contacts. *Id*.

## ANALYSIS

On appeal, Atiq asserts that CoTechno's "jurisdictional allegations are both factually and legally insufficient to establish personal jurisdiction over Atiq." Specifically, Atiq argues that "all of the complained of acts alleged to have been committed by Atiq were done in Canada in his representative capacity as an officer of Fiberex or C-Fabrics" and that under the fiduciary-shield doctrine none of these business contacts may be imputed to Atiq individually. According to Atiq, because the evidence shows that Atiq had no contacts with Texas in his individual capacity, the claims against him should be dismissed for lack of jurisdiction.

Under the fiduciary-shield doctrine, a nonresident corporate officer or employee is protected from the exercise of jurisdiction when all of that individual's contacts with the forum

8

state were made on behalf of his employer.[2] *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.); *see Morris v. Kohls-York*, 164 S.W.3d 686, 698 (Tex. App.—Austin 2005, pet. dism'd) (noting that courts of appeals have recognized fiduciary-shield doctrine, although supreme court has not explicitly adopted it). The fiduciary-shield doctrine, however, does not protect a corporate officer or employee from an assertion of personal jurisdiction when the opposing party has alleged intentional torts or fraudulent acts for which he may be held individually liable. *Ennis v. Loiseau*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.); *see Stull v. Laplant*, 411 S.W.3d 129, 135 (Tex. App.—Dallas 2013, no pet.). This is because a "corporate officer is primarily liable for his own torts." *Morris v. Powell*, 150 S.W.3d 212, 221 (Tex. App.—San Antonio 2004, no pet.). Similarly, the fiduciary-shield doctrine does not protect an individual from the exercise of jurisdiction based on claims of piercing the corporate veil. *Stull*, 411 S.W.3d at 135. "There is no blanket protection from jurisdiction simply because a defendant's alleged acts were

---

[2] Courts that have applied the fiduciary-shield doctrine have generally limited its application to the exercise of general jurisdiction over a nonresident defendant. *See Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.); *Ennis v. Louisea*, 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.). One court of appeals, however, has recently questioned and rejected this limitation. *See Stull v. Laplant*, 411 S.W.3d 129, 138 (Tex. App.—Dallas, 2013 no pet.). In that case, the plaintiffs asserted that the fiduciary-shield doctrine did not apply to their claim of breach of contract based on specific jurisdiction. *Id*. at 135-36. The Dallas Court of Appeals rejected the notion that the fiduciary-shield doctrine applies only to general-jurisdiction analysis and held that "even if a plaintiff asserts only specific jurisdiction regarding an alleged breach of contract against a non-resident agent of the contracting party, the agent's contacts with Texas in furtherance of the principal's business are attributable only to the employer, not to the agent, because the fiduciary shield doctrine applies." *Id*. at 138. Similarly, in this case, CoTechno argues that specific jurisdiction exists with respect to its breach-of-contract and tort claims against Atiq. However, we need not decide whether the fiduciary-shield doctrine generally applies to CoTechno's claims of specific jurisdiction. As we will explain, even if Atiq's actions are fairly attributable to him in his individual capacity, CoTechno has not established sufficient contacts to confer jurisdiction over Atiq in Texas.

9

done in a corporate capacity." *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 651 (Tex. App.—Fort Worth 2003, pet. denied).

Despite Atiq's assertion that he was at all times acting in a corporate capacity, CoTechno contends that Atiq is subject to personal jurisdiction in his individual capacity for three reasons. First, CoTechno contends that Atiq's contacts arising from the Future Business Agreement represent his personal contacts because, according to CoTechno, Atiq was not acting on behalf of a corporation when he signed the Agreement. CoTechno claims that "Atiq personally breached the [Future Business Agreement] by, inter alia, breaching the provision on ownership of fiberglass by claiming that Fiberex was the owner of fiberglass at CoTechno's warehouse, by failing to comply with the termination provisions, and by failing to transfer ownership of [C-Fabrics] to [CoTechno]." Second, CoTechno claims that "Atiq has committed actionable torts, in whole or in part in Hays County, Texas" for which he is personally liable, including fraud, breach of fiduciary duty, and interference with business relationships. Third, CoTechno argues that the fiduciary-shield doctrine does not apply because C-Fabrics and Fiberex were operating as the alter ego of Atiq. We will address each of CoTechno's assertions in turn.

**The Future Business Agreement**

We first examine CoTechno's assertion that Atiq signed the Future Business Agreement in his personal capacity. In its live pleadings, CoTechno asserts that Atiq is personally liable under the Agreement because Atiq signed the Agreement as an individual. Specifically, CoTechno alleges that, although Atiq purported to sign the Agreement on behalf of Fiberex, as CEO and President, and on behalf of C-Fabrics, as CEO and President, C-Fabrics had not yet been

10

formed and therefore was not in existence at the time of signing. Further, CoTechno alleges that, as a result of the Agreement, a partnership was formed between Fiberex, CoTechno, and Atiq. CoTechno's allegation that Atiq entered into the Agreement in his individual capacity serves as the basis for three of CoTechno's causes of action: (1) that Atiq is personally liable for breach of the Future Business Agreement; (2) that Atiq beached fiduciary duties that he owed to CoTechno as partner under the Future Business Agreement; and (3) that Atiq committed fraud by entering into the Agreement because he personally never intended to honor the Agreement.

"When an agent negotiates a contract for its principal in Texas, it is the principal who does business in this state, not the agent." *Mort Keshin & Co. v. Houston ChroniclePubl'g Co.*, 992 S.W.2d 642, 647 (Tex. App.—Houston [14th Dist.] 1999, no pet.). However, one "cannot act as an agent of a corporation that does not yet exist." *Cagle v. Clark*, 401 S.W.3d 379, 392 (Tex. App.—Texarkana 2013, no pet.).[3] As a result, to the extent a nonresident defendant's contacts represent actions taken on behalf of an unformed corporation, the nonresident defendant's contacts with the forum are attributable to him personally in analyzing personal jurisdiction. *Cappuccitti v. Gulf Indus. Prods., Inc.*, 222 S.W.3d 468, 486 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that corporate officer's actions prior to incorporation subjected officer to personal jurisdiction in Texas in his individual capacity for tort claims arising out of those actions).

---

[3] As a result, when a purported agent enters a contract on behalf of an unformed corporation, he is personally liable on the contract, absent an agreement to the contrary with the contracting party. *Fish v. Tandy Corp.*, 948 S.W.2d 886, 897 (Tex. App.—Fort Worth 1997, writ denied). In these circumstances, the agent is relieved of liability only when the corporation, once formed, subsequently adopts the contract either expressly or by accepting its benefits. *Id*. at 898.

In this case, the special-appearance record establishes that (1) the Articles of Incorporation for C-Fabrics were executed by Atiq on August 5, 2009; (2) the Future Business Agreement was signed on or about August 17, 2009; and (3) C-Fabrics's Articles of Incorporation were filed with the California Secretary of State on September 11, 2009.[4] Therefore, we agree that Atiq's contacts prior to the incorporation of C-Fabrics—to the extent the actions would otherwise be attributable to C-Fabrics—are the actions of Atiq personally for purposes of analyzing jurisdiction. *See Cagle*, 401 S.W.3d at 392 (considering nonresident defendant's "contacts prior to the formation of [the business entity] as contacts conducted in [defendant's] individual capacity"). Under this analysis, the undisputed evidence supports CoTechno's allegation that Atiq, in his personal capacity, entered into the Future Business Agreement with Fiberex and CoTechno, a Texas resident. Consequently, to the extent Atiq conducted business in Texas under the Agreement on behalf of C-Fabrics prior to its incorporation, we would also impute those contacts to Atiq personally.

Considering only Atiq's contacts in his individual capacity, however, we cannot conclude that Atiq's contacts with Texas support the exercise of specific jurisdiction with respect to CoTechno's claims related to the Future Business Agreement—breach of contract, breach of fiduciary duty, and fraud. Based on the pleaded jurisdictional facts and the evidence before us, Atiq has only a single forum contact that is related to the operative facts underlying these three claims—his execution of the Future Business Agreement.[5] To the extent the Agreement calls for

[4] In California, corporate existence begins upon the filing of articles of incorporation. *See* Cal. Corp. Code § 200.

[5] CoTechno also argues that Atiq traveled to San Marcos in 2009, prior to the execution of the Agreement, to meet with CoTechno about the proposed Agreement. To the extent CoTechno generally relies on this 2009 trip as a contact that was made by Atiq on behalf of C-Fabrics prior to

12

performance in Texas, it expressly calls for performance only on the part of C-Fabrics and Fiberex. Further, CoTechno has not specifically alleged nor presented any evidence of performance of the Agreement by Atiq after execution of the Agreement but prior to C-Fabrics's incorporation. For example, CoTechno has not alleged or presented evidence that during this four-week time period Atiq shipped materials to Texas, marketed to Texas, established an office in Texas, or otherwise conducted business in Texas under the Agreement.

Entering into a single contract with a Texas resident, generally, is insufficient to establish minimum contacts. *Michiana*, 168 S.W.3d at 786 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985)); *Max Protetch, Inc. v. Herrin*, 340 S.W.3d 878, 886 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Because there is no allegation or evidence that the Agreement contemplated or resulted in ongoing activities directed at Texas by Atiq in his personal capacity, we cannot conclude that this single contact is sufficient to support a finding that Atiq purposefully availed himself of the benefits and laws of Texas. As a result, the trial court erred to the extent it concluded that specific jurisdiction exists with respect to CoTechno's claims of breach of contract, breach of fiduciary duty, and fraud.

**Tortious conduct**

Next, we consider CoTechno's assertion that because Atiq engaged in tortious conduct in Texas for which he is personally liable, he is subject to personal jurisdiction in Texas.

---

its incorporation, we conclude that CoTechno has not specifically pleaded that this trip was undertaken on behalf of C-Fabrics and there is no evidence that would support such an implied finding. Instead, according to Atiq's undisputed affidavit, his travel to Texas in 2009 was solely in his capacity as an officer of Fiberex. As a result, we cannot attribute this travel to Atiq in his individual capacity, despite the fact C-Fabrics was not incorporated at the time of the trip.

13

An officer's actions performed in his corporate capacity may subject him to personal jurisdiction and liability in his individual capacity if his actions were tortious or fraudulent. *Niehaus v. Cedar Bridge, Inc.*, 208 S.W.3d 575, 581 (Tex. App.—Austin 2006, no pet.). However, a corporate officer's tortious or fraudulent activities will support the exercise of specific jurisdiction only when (1) the corporate officer's contacts with the forum demonstrate purposeful availment and (2) the cause of action arises from or relates to these contacts. *See id*. (explaining that defendants' fraudulent and tortious actions could support exercise of specific jurisdiction only if actions constituted purposeful availment and were substantially connected to litigation and forum).

CoTechno's conversion claim against Atiq arises from two alleged activities: (1) that Atiq directed "Mark Williams to go to Texas and remove all the fiberglass from the CoTechno warehouse in Texas" and (2) that Atiq "directed his agent to represent to the court that the property was owned by Fiberex."[6] In considering whether these contacts demonstrate that Atiq purposefully availed himself of the privileges and benefits of conducting business in Texas, we are mindful of the Texas Supreme Court's decision in *Michiana*. 168 S.W.3d at 789. In that case, the court held that a nonresident defendant's ability to foresee that his actions would cause harm in the forum state "is not a 'sufficient benchmark' for exercising personal jurisdiction" and rejected those decisions from courts of appeals that had previously held that a nonresident could be subject to personal jurisdiction

---

[6] While the parties ultimately dispute ownership rights in the fiberglass material, for purposes of analyzing jurisdiction we only consider whether this contact is sufficient to support the exercise of personal jurisdiction over Atiq. *See Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010) ("But the mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns. . . . Instead, jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business."); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784-85 (Tex. 2005).

14

based on an allegation that the defendant "directed a tort" at Texas. *Id*. at 788-90. Atiq asserts that CoTechno's jurisdictional allegations of conversion are nothing more than allegations that Atiq in his personal capacity directed a tort at Texas and, under *Michiana*, are insufficient to support jurisdiction. *See id*. at 789; *see also Niehaus*, 208 S.W.3d at 583 (concluding that specific jurisdiction did not exist over corporate officer who allegedly engaged in fraudulent activity outside of Texas with effects felt in Texas). However, we need not decide whether these allegations demonstrate purposeful availment or are simply allegations that Atiq directed a tort. Instead, we conclude that Atiq's contacts, even if purposeful, are insufficient to support the exercise of specific jurisdiction because the record does not support the conclusion that CoTechno's conversion claim is substantially connected to these contacts.

A cause of action relates to jurisdictional contacts when a substantial connection exists between the contacts and the operative facts of the litigation. *Moki Mac River Expeditions*, 221 S.W.3d at 576. Conversion is the "wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights," *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 211 n.44 (Tex. 2002), and the operative facts at trial concerning CoTechno's conversion claim against Atiq will be whether Atiq, or someone acting on his behalf, removed materials belonging to CoTechno from the CoTechno warehouse.

The conversion tort as alleged by CoTechno occurred in Texas and was felt in Texas, where the CoTechno warehouse was located. In addition, there can be no dispute that, based on CoTechno's allegations, Fiberex would be subject to the jurisdiction of Texas courts for CoTechno's conversion claim. However, there is no allegation or evidence suggesting that the materials were

15

removed by Atiq personally or by persons acting on his behalf personally. Instead, the undisputed evidence demonstrates that any action taken by Williams or others in removing the materials from CoTechno's warehouse was conducted on behalf of Fiberex. According to Williams's deposition, which was submitted as evidence at the special-appearance hearing, Williams was employed by Fiberex at the time the materials were removed by Fiberex employees, and the materials were removed because, at least according to Williams, the materials were the property of Fiberex.

Because there is nothing in the record suggesting that Atiq personally participated in the alleged conversion, CoTechno's claim against Atiq is, in effect, a claim that Atiq participated in a civil conspiracy to commit conversion. *See Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005) (civil conspiracy occurs when there are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result"). However, personal jurisdiction over a nonresident defendant cannot be based solely upon the effects or consequences of an alleged civil conspiracy. *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 773 (Tex. 1995). Instead, jurisdiction must be based on whether the defendant himself purposefully established minimum contacts that satisfy due process. *Id*. CoTechno has alleged that a causal relationship exists between Atiq's communication to Williams and the removal of the materials; however, but-for causation alone is insufficient to support specific jurisdiction. *Moncrief Oil Int'l*, 414 S.W.3d at 142. The relationship between the alleged contact—Atiq's communications outside of Texas, requesting that others conduct activity in Texas—and the operative facts in the litigation of CoTechno's conversion claim is simply too attenuated to satisfy specific jurisdiction's due-process concerns with respect to Atiq personally.

16

Similarly, CoTechno alleges that Atiq interfered with its business relationships. Specifically, CoTechno alleges that "Mark Williams, on behalf of Fiberex and Atiq," made certain misrepresentations to CoTechno customers or potential customers that caused harm to CoTechno. However, CoTechno does not explain, and we cannot discern, the jurisdictional contacts with Texas, if any, to which this claim relates. There is no allegation that these representations were made in Texas or to Texas residents. Moreover, there is no evidence suggesting that these representations by Williams, if made, were made on behalf of Atiq personally and not on behalf of Fiberex. Accordingly, based on the pleadings and the record before us, we conclude that the trial court erred to the extent it concluded that specific jurisdiction exists with respect to CoTechno's claim of tortious interference against Atiq.[7]

---

[7] CoTechno also argues that Atiq traveled to San Marcos in 2009, prior to the execution of the Agreement, to meet with CoTechno about the proposed contract and that during that meeting Atiq fraudulently induced CoTechno to enter into the Future Business Agreement. Specifically, CoTechno alleges that during negotiations in Texas, Atiq made certain promises, these promises were later incorporated into the Future Business Agreement, Atiq had no intention of personally complying with these promises at the time, and CoTechno ultimately signed the Future Business Agreement in reliance on these promises in the Agreement.

CoTechno's claim that Atiq committed fraud in connection with his 2009 trip to San Marcos is, in effect, a claim that Atiq committed fraud by executing the Future Business Agreement without any intent to perform. *Compare Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) ("A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act."), *with Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ("Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations."). However, as previously discussed, the undisputed evidence is that Atiq traveled to Texas on behalf of Fiberex to discuss the proposed Future Business Agreement and that the executed Agreement expressly called for performance only on the part of C-Fabrics and Fiberex, not Atiq personally. Based on the pleadings and evidence before us, we cannot conclude that Atiq's travel to Texas is sufficiently related to CoTechno's claim of fraud such that it would support the exercise of personal jurisdiction over Atiq in his individual capacity. *See Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653,

17

**Alter ego**

Finally, we consider CoTechno's assertion that Atiq is subject to personal jurisdiction based on the activities of C-Fabrics and Fiberex because the entities were operating as Atiq's alter ego.

Personal jurisdiction over an individual cannot be based on jurisdiction over a corporation with which the individual is associated unless the corporation is the alter ego of the individual. *Tabacinic*, 372 S.W.3d at 669; *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 277 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.). While ordinarily a nonresident defendant has the burden to negate all bases for personal jurisdiction properly pleaded, a plaintiff who relies on the existence of an alter-ego relationship to impute a corporation's contacts with Texas to an individual must prove that such a relationship exists. *Washington DC Party Shuttle, LLC v. Iguide Tours, LLC*, 406 S.W.3d 723, 739 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).[8] Evidence of alter ego includes proof of (1) the payment of alleged corporate debts with personal check or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use;

---

660 (Tex. 2010) (concluding that appellate court erred by allowing fraud claim against officers to proceed "despite lack of allegations and evidence that any part of the [fraud] claim originate[d] from the Officers' conduct in Texas").

[8] Because due-process considerations cannot be overridden by statute or common law, veil-piercing for purposes of liability is distinct from veil-piercing for jurisdictional purposes. *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 176 (Tex. 2007). As a consequence, courts have recognized that fraud, which is vital to piercing the corporate veil under section 21.223 of the Business Organizations Code, has no place in assessing contacts to determine jurisdiction. *Id*. Thus, to the extent CoTechno alternatively relies on its claims that Atiq used Fiberex as "a sham to perpetuate a fraud" as a separate basis for imputing jurisdictional contacts, we conclude that this reliance is improper.

18

(4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate.

*Crithfield v. Boothe*, 343 S.W.3d 274, 284-85 (Tex. App.—Dallas 2011, no pet.).

CoTechno claims that both C-Fabrics and Fiberex operated as the alter ego of Atiq. In relevant part, CoTechno has pleaded that:

> [C-Fabrics] was a shell: It had no operations; performed no tasks; had no employees; and, had no bank account. Atiq received checks payable to [C-Fabrics] and deposited those checks into either his personal account or the Fiberex account. [C-Fabrics] was supposed to be a wholly owned subsidiary of Fiberex, but [C-Fabrics] never issued any stock at all, much less to Fiberex. [C-Fabrics] had no employees and if any tasks needed to de done, it was either done by Atiq personally or a Fiberex employee at his direction. [C-Fabrics's] physical address was at the same location as a friend of Atiq's and if any mail came to that address, it was forwarded to Atiq, as a favor, by Atiq's friend. Finally, Fiberex issued invoices to [C-Fabrics's] customers on behalf of [C-Fabrics].

Most of CoTechno's alter-ego allegations are relevant to an issue not raised by CoTechno—whether C-Fabrics operated as the alter ego of Fiberex. *Cf. PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 175-76 (Tex. 2007) (discussing whether parent company and subsidiary should be treated as one for purposes of jurisdiction). These allegations have no bearing on the jurisdictional issue at hand—whether C-Fabrics and Fiberex operated as the alter ego of Atiq. In fact, CoTechno's sole relevant jurisdictional allegation is its claim that Atiq deposited funds belonging to C-Fabrics and Fiberex in his personal account. However, CoTechno presented no evidence to support this allegation or any other finding that would suggest that Atiq commingled

funds or otherwise failed to keep assets separate.[9]  Because CoTechno failed to present sufficient evidence in support of its claim of alter ego, the trial court erred to the extent it imputed jurisdictional contacts to Atiq on this basis.

**General Jurisdiction**

Finally, based on the record before us and on those contacts that are properly attributable to Atiq in his personal capacity, we consider whether Atiq's contacts with Texas support the exercise of general jurisdiction.  As previously discussed, "general jurisdiction involves a court's ability to exercise jurisdiction over a nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *Id*. at 168.  It requires a "more demanding minimum contacts analysis," *id*. (citing *CSR, Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996)), and exists only when a nonresident's contacts with the state are continuous and systematic, *Moncrief Oil Int'l*, 414 S.W.3d at 150.

In this case, the undisputed evidence establishes that Atiq is domiciled in Canada, not Texas.  *See Goodyear*, 131 S.Ct. at 2853-54 (explaining that "paradigm forum for the exercise of general jurisdiction is the individual's domicile").  Further, considering only those contacts that are attributable to Atiq in his personal capacity, which we previously discussed, CoTechno has failed to establish that Atiq, in his personal capacity, had any longstanding or substantial activities in Texas

---

[9]  Moreover, to the extent CoTechno has sufficiently proven that C-Fabrics was operated as an alter ego of Atiq, it is unclear how this allegation, even if true, is relevant to Atiq's personal jurisdiction since CoTechno has not sued or otherwise alleged wrongdoing on the part of C-Fabrics. Other than entering into the Future Business Agreement, there are no alleged contacts with Texas on the part of C-Fabrics.

20

such that Atiq is "essentially at home in [Texas]." *Id.* at 2851. As a consequence, the trial court erred to the extent it concluded that general jurisdiction existed over Atiq.

## CONCLUSION

Because the trial court lacked personal jurisdiction, we reverse its order denying Atiq's special appearance and render judgment dismissing CoTechno's claims against him.

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Rendered on Rehearing

Filed: November 4, 2015