**Concurring and Dissenting and Opinion Filed August 20, 2021**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00274-CV**

**STEWARD HEALTH CARE SYSTEM, LLC**
**AND SOUTHWEST GENERAL HOSPITAL, LP, Appellants**
**V.**
**FRANK SAIDARA, Appellee**

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-16862**

## CONCURRING AND DISSENTING OPINION

Before the Court En Banc
Concurring and Dissenting Opinion by Justice Osborne

I agree with and join section I of the majority opinion which contains the majority's recitation of the facts, but write separately to provide additional facts necessary to my concurring and dissenting analyses. While I am in agreement with the majority's judgment to the extent it affirms the trial court's order granting Frank Saidara's special appearance as to the statutory claims against him, I do not join section III of the majority's opinion because I disagree with the reasoning relating to the plaintiff's burden of proof. Further, I would conclude the trial court erred by granting Saidara's special appearance and dismissing the common law claims

against him. I write separately to explain my dissent to that part of section III of the majority opinion and state why I would reverse and remand that portion of the trial court's order. I also include an analysis of the fiduciary shield doctrine because I consider it necessary to the disposition of the appeal. The following is how I would analyze the parties' issues:

This interlocutory appeal is about whether Texas has personal jurisdiction over a nonresident defendant who is alleged to have committed torts while in Texas. And because Saidara 'messed with Texas' by traveling here where it is alleged he committed common law torts for which he can be found personally liable, I believe Texas has jurisdiction over those claims.

I would conclude: (1) the fiduciary-shield doctrine does not protect Saidara from the exercise of specific jurisdiction in Texas; (2) the trial court did not err when it granted Saidara's special appearance as to Steward Health Care System, LLC and Southwest General Hospital, LP's statutory claims for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and violation of the Texas Harmful Access by Computer Act; and (3) the trial court erred when it granted Saidara's special appearance as to Steward Health and Southwest General's common law claims against Saidara for fraud and "unfair competition." I would reverse in

part and affirm in part the trial court's order, and remand the case for further proceedings consistent with this opinion.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual background in this opinion is a recitation of the allegations and evidence contained in Saidara's special appearance and Steward Health and Southwest General's first amended petition and response to the special appearance.

Steward Health is a Delaware limited liability company with its principal place of business in Dallas, Texas. It is a Dallas-based health system and owns numerous hospitals including Southwest General, which is a Delaware limited partnership with its principal place of business in San Antonio, Texas. Prospect Medical Holdings, Inc. (Prospect Medical) is a Delaware corporation with its principal place of business in Los Angeles, California. Saidara is the vice president of corporate development for Prospect Medical. He resides and works in California. Prospect Medical owns Prospect Health Services TX, Inc., f/k/a Nix Health Services Corporation (Prospect Health) which is a Texas corporation with its principal place of business in San Antonio, Texas.

In 2018, Prospect Medical approached Steward Health about acquiring the assets of Southwest General. To facilitate Prospect Medical's due diligence, Steward Health set up a virtual data room where documents relevant to the proposed

---

[1] While I do not agree with the account of the facts or the allegations contained in Parts II, III, and IV of Justice Schenck's concurring opinion, I decline to address or otherwise entertain them because they are not relevant to the disposition of this appeal. *See* TEX. R. APP. P. 47.1.

–3–

transaction were uploaded; a subset of the data was placed into a more restrictive virtual clean room. Prospect Medical tasked Saidara as well as other officers and high-level employees with conducting negotiations and performing due diligence related to the transaction. The individuals with access to the virtual clean room (the clean team), which included Saidara, were approved by Steward Health and required to sign a clean team agreement that limited their disclosure of information, expressly authorized the clean team to prepare "evaluative analyses and aggregated summaries" of the sensitive materials for their individual use in evaluating the proposed transaction, prohibited the unauthorized sharing or dissemination of the materials in the virtual clean room as well as any documents created that incorporated or used that sensitive information, and restricted their use of the sensitive information to the purposes permitted by a separate confidentiality agreement signed by Steward Health and Prospect Medical.

Saidara accessed information online in the virtual data room and clean room from his work computer in California. He also participated in electronic and telephonic communications with Steward Health and Southwest General relating to the potential transaction. On one occasion, Saidara traveled to Texas, toured the Southwest General facility with James Summerset, the interim chief executive officer of Prospect Health, and attended a meeting with high-level agents of Steward Health and Southwest General. While on the site visit, "Summerset asked an unusual amount of questions about proprietary Southwest General data.

–4–

Specifically, Summerset inquired about physician employment arrangements and compensation data." On September 15, 2018, Saidara allegedly downloaded all of the information from the virtual clean room to his work computer in California.

On September 20, 2018, Prospect Medical informed Steward Health that it was no longer interested in acquiring the assets of Southwest General. Steward Health and Southwest General allege that persons within Prospect Medical and Prospect Health later leaked information relating to the proposed transaction, which made it more difficult for Southwest General to market and sell its assets.

Then, on November 7, 2018, Steward Health and Southwest General filed their original petition against Prospect Medical, Prospect Health, and Saidara. In their first amended petition, Steward Health and Southwest General alleged claims for: (1) common law fraud and violations of the Texas Harmful Access by Computer Act against Prospect Medical, Prospect Health, and Saidara; (2) statutory misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and common law "unfair competition" against Prospect Medical and Saidara; and (3) conspiracy against Prospect Medical and Prospect Health. Steward Health and Southwest General claimed that personal jurisdiction existed as to Saidara because he had contacts with Texas with respect to the complained-of acts.

Saidara filed a special appearance arguing the trial court lacked personal jurisdiction over him because: (1) there is no basis for general jurisdiction; and (2) the trial court cannot exercise specific jurisdiction because (a) the alleged activities

supporting the claims against him occurred while Saidara was in California acting in the course of his employment with Prospect Medical, (b) all of his alleged wrongful acts were in connection with his employment so he is protected by the fiduciary-shield doctrine, and (c) "[Steward Health and Southwest General] have failed to plead any purposeful (wrongful) activities by Saidara originating in Texas." Attached to Saidara's special appearance were his declaration and the clean team agreement.

Steward Health and Southwest General responded that the trial court had specific jurisdiction over Saidara but did not attach any evidence to support their allegations. The trial court signed an order granting Saidara's special appearance and dismissing the claims against him. In that order, the trial court concluded that "there is no record evidence that would support the exercise of general jurisdiction over [] Saidara" and there was no specific jurisdiction.

## II. SAIDARA'S SPECIAL APPEARANCE

Steward Health and Southwest General raise one issue on appeal arguing the trial court erred when it granted Saidara's special appearance.[2] They argue the trial court has specific jurisdiction over Saidara because: (1) the Texas long-arm statute extends to Saidara's contacts; (2) Saidara had sufficient minimum contacts with Texas; (3) Saidara cannot show the exercise of specific jurisdiction would impose

---

[2] Steward Health and Southwest General do not challenge the portion of the trial court's order that concludes there was no evidence to support the exercise of general jurisdiction over Saidara.

–6–

an unreasonable burden on him; and (4) the fiduciary-shield doctrine does not protect Saidara from specific jurisdiction.

### (A)  Fiduciary-Shield Doctrine

I begin with an analysis of Steward Health and Southwest General's argument that the trial court erred when it granted Saidara's special appearance on the basis that the fiduciary-shield doctrine protects Saidara from specific jurisdiction because, if the trial court did not err, that argument would be dispositive of this appeal. Specifically, they contend the fiduciary-shield doctrine does not protect Saidara from their tort claims for fraud, violation of the Texas Harmful Access to Computer Act, misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, and common law "unfair competition."  Saidara responds that Steward Health and Southwest General have not pleaded sufficient facts to show that Saidara has actually committed tortious or fraudulent acts for which he may be personally liable.  He also argues that the uncontroverted evidence demonstrates he did not commit any of the alleged torts.[3]

### (1)  Applicable Law

In a special appearance, a defendant may deny that the alleged contacts apply to him because he was acting in the course and scope of his employment.  *See Stull*

---

[3] In support of this contention, Saidara cites his declaration and the clean team agreement.  However, neither of these documents attempts to negate the allegations that Saidara made misrepresentations during his visit to Texas or in his telephonic and electronic communications with individuals in Texas, and that he received some of Southwest General's highly confidential, proprietary, and trade-secret information— including the identities and specialties of Southwest General's most important physicians—while in Texas.

–7–

*v. LaPlant*, 411 S.W.3d 129, 135 (Tex. App.—Dallas 2013, no pet.).  The fiduciary-shield doctrine protects a nonresident corporate officer or employee from the exercise of jurisdiction when all of his contacts with Texas were made on behalf of his employer.  *Tabacinic v. Frazier*, 372 S.W.3d 658, 668 (Tex. App.—Dallas 2012, no pet.); *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009, no pet.).  However, a corporate agent is not shielded from the exercise of specific jurisdiction as to torts for which the employee may be held individually liable.[4]  *Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *2 (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.); *Stull*, 411 S.W.3d at 137.  Further, the fiduciary-shield doctrine does not protect an employee from the exercise of specific jurisdiction if he engaged in tortious or fraudulent conduct directed at the forum state for which he may be held personally liable—even if all of the employee's contacts with Texas were performed in a

---

[4]  I note that the law in Texas is not well settled as to whether the fiduciary-shield doctrine applies to the exercise of specific jurisdiction.  However, this Court has rejected the view that the fiduciary-shield doctrine applies only to general-jurisdiction cases.  *Stull*, 411 S.W.3d at 136–39.  *Stull* distinguished prior cases that seemed to say the opposite.  *Id.* at 136–37 n.4 (citing, *e.g.*, *Tabacinic*, 372 S.W.3d at 668, and *Crithfield v. Boothe*, 343 S.W.3d 274, 287 (Tex. App.—Dallas 2011, no pet.)).  *But see Yew Yuen Chow v. Rodriguez San Pedro*, No. 14-18-00429-CV, 2019 WL 4021908, at *7 (Tex. App.—Houston [14th Dist.] Aug. 27, 2019, pet. denied) (mem. op.) (noting most Texas courts applying the fiduciary-shield doctrine have limited its application to attempts to exercise general—not specific—jurisdiction over a nonresident defendant); *Lucas v. Ryan*, No. 02-18-00053-CV, 2019 WL 2635561, at *9 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) (noting some courts, including the Fort Worth Court of Appeals, have restricted the application of fiduciary-shield doctrine to attempts to exercise general jurisdiction); *Steamboat Capital Mgmt., LLC v. Lowry*, No. 01-16-00956-CV, 2017 WL 5623414, at *11 (Tex. App.—Houston [1st Dist.] Nov. 21, 2017, no pet.) (mem. op.) (declining to apply fiduciary-shield doctrine to invocation of specific jurisdiction, even if doctrine had been raised in trial court, noting doctrine is limited to application of general jurisdiction).  Nevertheless, it should also be noted that the *Stull* court applied the fiduciary-shield doctrine in a breach-of-contract case premised on specific jurisdiction, not a tort case.  411 S.W.3d at 138.  And often an individual defendant acting in a corporate role will not be individually liable for the breach of a corporate contract.

corporate capacity. *Spurgeon v. Empire Petroleum Partners, LLC*, No. 05-18-00783-CV, 2019 WL 2521722, at *3–4 (Tex. App.—Dallas June 19, 2019, no pet.) (mem. op.); *Nev. Nat'l Advert., Inc. v. Silverleaf Resorts, Inc.*, No. 05-16-00694-CV, 2017 WL 655949, at *11 (Tex. App.—Dallas Feb. 17, 2017, no pet.) (mem. op.); *see also Madison Dev. Grp. LLC v. Mattress Firm, Inc.*, 608 S.W.3d 376, 399 (Tex. App.—Houston [1st Dist.] Aug. 6, 2020, no pet.); *Yew Yuen Chow*, 2019 WL 4021908, at *7 (rejecting argument that defendants are entitled to protection from specific jurisdiction on plaintiff's tort claims simply because their alleged torts of fraud, breach of fiduciary duty, and negligent misrepresentation were allegedly committed in a corporate capacity).

## (2) Application of the Law to the Facts

In their first amended petition, Steward Health and Southwest General alleged claims against Saidara for fraud, violation of the Texas Harmful Access to Computer Act, misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, and common law "unfair competition." All of these are tort claims.[5] Saidara makes no argument that he cannot be held liable individually on these claims, and I see no reason he cannot.

---

[5] *See generally Agar Corp., Inc. v. Electro Circuits Int'l, L.L.C.*, 580 S.W.3d 136, 146 (Tex. 2019) (generally referring to unfair competition as a tort); *Hunter v. Marshall*, No. 01-16-00636-CV, 2018 WL 6684840, at *7 (Tex. App.—Houston [1st Dist.] Dec. 20, 2018, no pet.) (mem. op.) (generally referring to violations of the Texas Harmful Access by Computer Acts as a tort); *Alanis v. US Bank Nat'l Ass'n*, 489 S.W.3d 485, 507 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (fraud is common law tort).

The contacts with Texas giving rise to Steward Health and Southwest General's tort claims against Saidara are deemed to have been made by Saidara in his individual capacity. *See Jani-King*, 2016 WL 2609314, at *2; *Stull*, 411 S.W.3d at 137. The fiduciary-shield doctrine does not shield Saidara from the exercise of specific jurisdiction in this case if jurisdiction is otherwise proper. *See Jani-King*, 2016 WL 2609314, at *2; *Stull*, 411 S.W.3d at 137.

Accordingly, I would conclude the trial court erred to the extent it concluded the fiduciary-shield doctrine protects Saidara from the exercise of specific jurisdiction for Steward Health and Southwest General's tort claims.

### (B) Specific Jurisdiction Over Saidara

Steward Health and Southwest General argue that the trial court has specific jurisdiction over Saidara because: (1) the Texas long-arm statute extends to Saidara's contacts; (2) Saidara had sufficient minimum contacts with Texas; and (3) Saidara cannot show the exercise of specific jurisdiction would impose an unreasonable burden on him. Saidara responds that the trial court properly concluded it lacked personal jurisdiction over him because his contacts with Texas were insufficient to confer specific jurisdiction. And, even if he had sufficient minimum contacts with Texas, the exercise of personal jurisdiction over him does not comport with traditional notions of fair play and substantial justice.

**(1) Standard of Review**

Section II(a) of the majority opinion correctly states the applicable standard of review. I would add, however, that specific jurisdiction requires courts to analyze jurisdictional contacts on a claim-by-claim basis. *M&F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 886 (Tex. 2017); *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *see also Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010) (separately analyzing the sufficiency of jurisdictional allegations of plaintiff's claims). When a plaintiff brings multiple claims that arise out of a nonresident defendant's different forum contacts, the plaintiff must establish specific jurisdiction for each claim because the Due Process Clause prohibits the exercise of jurisdiction over any claim that does not arise out of or result from the defendant's forum contacts. *E.g.*, *Moncrief*, 414 S.W.3d at 150. However, a court need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts. *Id.* at 150–51.

**(2) Burdens of the Parties in a Special Appearance**

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *E.g.*, *Luciano v. SprayFoamPolymers.com, LLC*, No. 18-0350, 2021 WL 2603840, at *3 (Tex. June 25, 2021); *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 559 (Tex. 2018); *Moncrief*, 414 S.W.3d at 149. In order to meet its burden, a plaintiff must show the act on which jurisdiction is predicated, not a prima facie

demonstration of the existence of a cause of action. *Bruno's Inc. v. Arty Imports, Inc.*, 119 S.W.3d 893, 896–97 (Tex. App.—Dallas 2003, no pet.); *Clark v. Noyes*, 871 S.W.2d 508, 511 (Tex. App.—Dallas 1994, no pet.) (although Texas courts use federal due process standard for analyzing minimum contacts, they do not use federal procedural rules, which would incorrectly place burden to show sufficient minimum contacts on the party seeking to invoke jurisdiction). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas or committed tortious acts in Texas. *Jani-King*, 2016 WL 2609314, at *4; *Assurances Générales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.).

To determine whether a plaintiff has met its initial burden to plead sufficient allegations to invoke jurisdiction over a nonresident defendant under the Texas long-arm statute, an appellate court looks at the jurisdictional facts pleaded in the plaintiff's petition, as well as the jurisdictional facts alleged in the plaintiff's response to the nonresident defendant's special appearance. TEX. R. CIV. P. 120a(3); *B.G.C. v. M.Y.R.*, No. 05-20-00318-CV, 2020 WL 5987913, at *2 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.); *Jani-King*, 2016 WL 2609314, at *4.[6]

---

[6] *See also Invasix, Inc. v. James*, No. 05-19-00494-CV, 2020 WL 897243, at *4 (Tex. App.—Dallas Feb. 25, 2020, no pet.) (mem. op.); *Golden Peanut Co. v. Give & Go Prepared Foods Corp.*, No. 05-18-00626-CV, 2019 WL 2098473, at *4 (Tex. App.—Dallas May 14, 2019, no pet.) (mem. op.); *Cooper Gay Martinez del Rio y Asociados Intermediarios de Reaseguro S.A. de C.V. v. Elamex, S.A. de C.V.*, No. 05-16-01436-CV, 2017 WL 3599690, at *5 (Tex. App.—Dallas Aug. 22, 2017, no pet.) (mem. op.); *Seguros Afirme, S.A. de C.V. v. Elamex, S.A. de C.V.*, No. 05-16-01465-CV, 2017 WL 3599693, at *5 (Tex. App.—Dallas Aug. 22, 2017, no pet.) (mem. op.); *N. Frac Proppants, II, LLC v. 2011 NF Holdings, LLC*, No. 05-

Once the plaintiff has met this burden, the nonresident defendant has the burden to negate all bases of personal jurisdiction alleged in the plaintiff's petition. *E.g.*, *Luciano*, 2021 WL 2603840, at *3; *Old Republic*, 549 S.W.3d at 559; *Moncrief*, 414 S.W.3d at 149. The nonresident defendant can negate jurisdiction on either a factual or legal basis. *Kelly*, 301 S.W.3d at 659. Factually, the nonresident defendant can present evidence it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Old Republic*, 549 S.W.3d at 559; *Kelly*, 301 S.W.3d at 659. Legally, the nonresident defendant can show that, even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Old Republic*, 549 S.W.3d at 559; *Kelly*, 301 S.W.3d at 659.

---

16-00319-CV, 2017 WL 3275896, at *2, 5 (Tex. App.—Dallas July 27, 2017, no pet.) (mem. op.); *Nat'l Fire Ins. Co of Hartford v. CE Design, Ltd.*, 429 S.W.3d 806, 811 & n.6 (Tex. App.—Dallas 2014, no pet.) (noting Court unpersuaded by appellees' assertion that appellants failed to plead jurisdictional facts and stating that, in addition to facts alleged in their original petition for declaratory relief, appellants set out their factual allegations in support of jurisdiction in their opposition and supplemental opposition to appellees' special appearance and motion to dismiss); *Stull*, 411 S.W.3d at 134; *NexBank, SSB v. Countrywide Fin. Corp.*, No. 05-12-00567-CV, 2013 WL 2244830, at *2 (Tex. App.—Dallas May 22, 2013, no pet.) (mem. op.); *Camac v. Dontos*, 390 S.W.3d 398, 405 (Tex. App.—Dallas 2012, no pet.); *Crithfield*, 343 S.W.3d at 282; *All. Royalties, LLC v. Boothe*, 329 S.W.3d 117, 120–21 (Tex. App.—Dallas 2010, no pet.); *Wikert v. Year One, Inc.*, 320 S.W.3d 522, 524 (Tex. App.—Dallas 2010, no pet.); *Alencar v. Shaw*, 323 S.W.3d 548, 552 (Tex. App.—Dallas 2010, no pet.); *Ahrens & DeAngeli, P.L.L.C. v. Flinn*, 318 S.W.3d 474, 478 (Tex. App.—Dallas 2010, pet. denied); *Proctor v. Buell*, 293 S.W.3d 924, 930–31 (Tex. App.—Dallas 2009, no pet.); *Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 374 (Tex. App.—Dallas 2007, pet. denied).

However, if the plaintiff does not plead any jurisdictional facts, the defendant still has the burden of proof, but he can carry his burden merely by proving that he is not a resident of Texas. *Kelly*, 301 S.W.3d at 658–59 (holding plaintiff had failed to plead any jurisdictional facts, and therefore, defendants were entitled to dismissal by proving nonresidency); *Bruno's, Inc.*, 119 S.W.3d at 897; *Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673 (Tex. App.—Dallas, 1993, writ dism'd by agr.); *see also Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) (proof of nonresidency sufficient to carry burden of proof where plaintiff alleged no acts by defendants in Texas or any acts by defendants having foreseeable effects in Texas). Otherwise, the defendant must negate the pleaded jurisdictional facts. *Bruno's Inc.*, 119 S.W.3d at 897.

If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff who can then respond with its own evidence that affirms its allegations to show that the court has personal jurisdiction over the nonresident defendant. *Kelly*, 301 S.W.3d at 659 & n.6; *Assurances Générales*, 282 S.W.3d at 695.

### (3) Personal Jurisdiction

The nature of the evidence a party must adduce to meet its burden of proof is defined by the Constitution, the Texas Legislature, statutes, and case law. *Assurances Générales*, 282 S.W.3d at 695–96; *accord Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (long established that

–14–

Fourteenth Amendment limits personal jurisdiction of state courts); *see also Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016) (personal jurisdiction turns on both federal and state law). Texas courts may assert personal jurisdiction over a nonresident defendant if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Luciano*, 2021 WL 2603840, at *3; *Old Republic*, 549 S.W.3d at 558; *Moncrief*, 414 S.W.3d at 149.

### (a) Texas Long–Arm Statute

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–17.045; *PHC–Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007). The Texas long-arm statute is satisfied by a nonresident defendant who "commits a tort in whole or in part in this state." CIV. PRAC. & REM. § 17.042(2); *Luciano*, 2021 WL 2603840, at *3; *Old Republic*, 549 S.W.3d at 558–59.

The broad language of § 17.042 extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit. *PHC–Minden*, 235 S.W.3d at 166; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007). However, allegations that a tort was committed in Texas do not necessarily satisfy the United States Constitution. *Old Republic*, 549 S.W.3d at 559; *Moncrief*, 414 S.W.3d at 149.

## (b) Due Process

In addition to the long-arm statute, the exercise of personal jurisdiction over a nonresident defendant must satisfy federal due process requirements. *See PHC–Minden*, 235 S.W.3d at 166; *accord Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal., Solano Cty.*, 480 U.S. 102, 108 (1987) (plurality op.); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over a nonresident defendant is constitutional when: (1) the nonresident defendant has established minimum contacts with the forum state; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Luciano*, 2021 WL 2603840, at *3; *Old Republic*, 549 S.W.3d at 559; *accord Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

## (i) Minimum Contacts

The purpose of the minimum contacts analysis is to protect a nonresident defendant from being haled into court when his relationship with the forum state is too attenuated to support jurisdiction. *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002). The focus of the minimum contacts analysis is on the nonresident defendant's activities and expectations. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790 (Tex. 2005). A nonresident defendant's contacts with a forum state can give rise to: (1) general jurisdiction (sometimes called "all-purpose"); or (2) specific jurisdiction (sometimes called "case-linked").

*Luciano*, 2021 WL 2603840, at \*3; *Moncrief*, 414 S.W.3d at 150; *accord Ford*, 2021 WL 1132515, at \*4.

Specific jurisdiction refers to personal jurisdiction over a nonresident defendant in a lawsuit that arises out of or is related to the nonresident defendant's contacts with the forum state. *Moki Mac*, 221 S.W.3d at 576; *accord Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendant, the forum state, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76; *accord Bristol-Myers Squibb*, 137 S. Ct. at 1780. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful and (2) the cause of action must arise from or relate to those contacts. *Moki Mac*, 221 S.W.3d at 579; *accord Burger King*, 471 U.S. at 474–75.

### [a] Purposeful Availment

Purposeful availment is the touchstone of the jurisdictional due process analysis. *Luciano*, 2021 WL 2603840, at \*3; *Michiana*, 168 S.W.3d at 784. A nonresident defendant's activities must be purposefully directed toward the forum state so that the nonresident defendant could foresee being haled into court there. *Burger King*, 471 U.S. at 474. There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied

on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction. *Moki Mac*, 221 S.W.3d at 575; *accord Walden v. Fiore*, 571 U.S. 277, 284–86 (2014); *Burger King*, 471 U.S. at 474–75.

### [b] Alleged Liability Arises From or Relates to Contacts

Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *Moki Mac*, 221 S.W.3d at 576; *accord Bristol-Myers Squibb*, 137 S. Ct. at 1780. The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *Moki Mac*, 221 S.W.3d at 579. In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585; *accord Walden*, 571 U.S. at 284. The operative facts of the litigation are those facts the trial court will focus on to prove the nonresident defendant's liability. *See Jani-King*, 2016 WL 2609314, at *5.

### (ii) Traditional Notions of Fair Play and Substantial Justice

In addition to minimum contacts, the exercise of personal jurisdiction over a nonresident defendant must comport with traditional notions of fair play and substantial justice. *Luciano*, 2021 WL 2603840, at *12; *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Courts evaluate those contacts

in light of the following five factors to determine whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice: (1) the nonresident defendant's burden; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining an efficient resolution to disputes; and (5) the states' common interest in furthering fundamental, substantive social policies. *Luciano*, 2021 WL 2603840, at *12; *accord Burger King*, 471 U.S. at 477.

However, when a nonresident defendant has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Luciano*, 2021 WL 2603840, at *12; *TV Azteca v. Ruiz*, 490 S.W.3d 29, 55 (Tex. 2016).

### (C) Application of the Law to the Facts

### (1) Adequacy of the Pleadings

As an initial matter, I address Saidara's contention that the trial court did not err because Steward Health and Southwest General "failed to meet their burden of pleading sufficient facts to establish a substantial connection between Saidara's alleged contacts with Texas and their claims for relief." Saidara relies on federal case law for the proposition that Steward Health and Southwest General were required to present a prima facie case with some evidence to make that showing.

However, under Texas law, Steward Health and Southwest General bore the initial burden of pleading sufficient allegations to bring Saidara within the provisions of the Texas long-arm statute. *See Old Republic*, 549 S.W.3d at 559; *Moncrief*, 414 S.W.3d at 149. They were not required, as Saidara contends, to provide a prima facie demonstration of the existence of their causes of action. *See Bruno's Inc.*, 119 S.W.3d at 896–97. Once Steward Health and Southwest General pleaded sufficient allegations to bring Saidara within the reach of Texas's long-arm statute, Saidara had the burden to negate all bases of personal jurisdiction alleged in their first amended petition. *See, e.g.*, *Old Republic*, 549 S.W.3d at 559. If we required Steward Health and Southwest General to provide a prima facie demonstration of the existence of their causes of action, we would be incorrectly transferring Saidara's burden to them. *See Clark*, 871 S.W.2d at 511.

Nevertheless, I would liberally construe Saidara's contention to be that Steward Health and Southwest General failed to meet their minimal pleading requirement so the burden to negate jurisdiction never shifted to him. Steward Health and Southwest General maintain that the allegations in their first amended petition are uncontroverted and demonstrate specific jurisdiction.

In Steward Health and Southwest General's first amended petition, they claimed "[p]ersonal jurisdiction exists as to Saidara because he had contacts with Texas with respect to the acts complained of herein, including travel to Texas specifically directed at the transaction forming the basis of this lawsuit." In the

–20–

"Background" section of their amended petition, they also stated that "Saidara visited Texas in connection with the sale of Southwest General's assets and participated in numerous communications (both electronically and telephonically) with counterparties in Dallas during which he misrepresented Prospect [Medical's] intention to purchase Southwest General. Saidara's communications were intentional and were directed to Steward [Health] in Texas." They further stated that "[d]uring one of Saidara's visits to Texas, he participated in a site visit at the Southwest General [f]acility."

In their response to Saidara's special appearance, Steward Health and Southwest General argued the trial court had specific jurisdiction over Saidara. First, they claimed the Texas long-arm statute was satisfied because Saidara committed fraud when during a visit to Texas he made material misrepresentations as to Prospect Medical's intent to purchase Southwest General's assets. Second, they maintained that the exercise of personal jurisdiction over Saidara was consistent with state and federal due process requirements. In summary, they argued that Saidara had sufficient minimum contacts with Texas because he purposefully availed himself of the forum when:

    (1)    he planned in advance and traveled to Texas to visit Southwest General, receiving a comprehensive tour of the facility and attending an hours-long meeting with high[-]level agents of Steward Health, Southwest General, and their investment banker to discuss the acquisition;

–21–

(2)  he engaged in numerous telephonic and electronic communications with Steward Health's and Southwest General's agents in Texas; and

(3)  while in Texas, he made misrepresentations and received some of Southwest General's highly confidential, proprietary, and trade-secret information, including the identities and specialties of Southwest General's most important physicians.

Further, Steward Health and Southwest General argued that the exercise of personal jurisdiction over Saidara comported with traditional notions of fair play and substantial justice because:

(1)  the distance between Texas and California is reasonable,

(2)  Texas has a clear interest in resolving the dispute because Saidara is alleged to have committed a tort in Texas,

(3)  Steward Health's and Southwest General's principal places of business are in Texas,

(4)  the subject of the transaction at issue was a Texas hospital, and

(5)  judicial economy is promoted by the adjudication of the claims against Saidara with the claims against Prospect Medical and Prospect Health.

Finally, they claimed that Saidara could not hide behind the corporate form to avoid jurisdiction.

Looking at the jurisdictional facts pleaded in Steward Health and Southwest General's first amended petition, as well as the jurisdictional facts alleged in their response to Saidara's special appearance, I would conclude that they met their initial burden of pleading allegations sufficient to confer jurisdiction over Saidara because they alleged he committed tortious acts in Texas. *See Jani-King*, 2016 WL 2609314,

–22–

at *4 (appellate court looks at jurisdictional facts pleaded in petition, as well as jurisdictional facts alleged in response to nonresident defendant's special appearance); *Petrie v. Widby*, 194 S.W.3d 168, 175 (Tex. App.—Dallas 2006, no pet.) (nonresident who travels to Texas and makes statements alleged to be fraudulent is subject to specific jurisdiction in Texas).[7]

The majority concludes that the Texas Supreme Court's statement in *Kelly* that "the defendant's corresponding burden to negate jurisdiction is tied to the allegations *in the plaintiff's pleading*" requires courts to look only to the jurisdictional allegations alleged in the plaintiff's petition. *See Kelly*, 301 S.W.3d at 658 (emphasis added). And, as a result, any jurisdictional facts alleged for the first time in a response to a special appearance may not be considered. I disagree with the majority's conclusion for three reasons: (1) case law does not support the majority's interpretation; (2) the majority's strict, technical approach is not in line with other case law and procedural directives; and (3) the majority's conclusion changes the law in a way the parties could not have anticipated.

First, the majority acknowledges that several cases from this Court as well as most of the other intermediate courts of appeals support my position that we should look to the jurisdictional facts pleaded in the plaintiff's petition, as well as the

---

[7] I note that in connection with his special appearance, Saidara filed evidence that included his declaration. To the extent that evidence negated Steward Health and Southwest General's allegations, the burden shifted back to Steward Health and Southwest General to show that the evidence was legally or factually insufficient to negate personal jurisdiction. I further note that Steward Health and Southwest General did not attach any evidence to their response to Saidara's special appearance.

jurisdictional facts alleged in the plaintiff's response to the nonresident defendant's special appearance. However, the majority states that the Texas Supreme Court has not approved of this practice and has overruled our opinions to the contrary. I agree with the majority that the Texas Supreme Court has not expressly approved of this practice, but I disagree that it has rejected it.

This Court recently examined this practice in *B.G.C. v. M.Y.R*, No. 05-20-00318-CV, 2020 WL 5987913, at *2 (Tex. App.—Dallas Oct. 9, 2020, pet. denied) (mem. op.) and the Texas Supreme Court denied the defendant's petition for review on February 26, 2021. I acknowledge that the denial of a petition for review indicates that "Texas Supreme Court is not satisfied that the opinion of the court of appeals has correctly declared the law in all respects but determines that the petition presents no error that requires reversal or that is of such importance to the jurisprudence of the State as to require correction." TEXAS RULES OF FORM: THE GREENBOOK app. D (Tex. L. Rev. Ass'n ed., 14th ed. 2018). But this Court's holding that the plaintiff's "original pleading as well as its response to the defendant's special appearance can be considered in determining whether the plaintiff satisfied its burden" was at the very heart of *B.G.C.*'s petition for review and, as a result, the Texas Supreme Court's denial of the petition for review implies that it approves of this well-established practice among the courts of appeals.

In *Alliance Royalties, LLC v. Boothe*, this Court specifically addressed *Kelly* and concluded that *Kelly* "did not overrule or discuss [the] cases permitting

–24–

jurisdictional allegations to be included in a response to a special appearance." 329 S.W.3d at 120–21.

Further, this Court would not be the first court of appeals sitting en banc to reach a conclusion similar to the one I would reach. In *Washington DC Party Shuttle, LLC v. IGuide Tours*, 406 S.W.3d 723, 738 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (en banc), the Fourteenth District Court of Appeals noted that the plaintiffs provided a basis for jurisdiction in their response to the special appearance that was not in their petition and reiterated its prior holding that the trial court may consider the plaintiffs' response to the special appearance as well as its pleadings when determining whether the plaintiff satisfied its initial burden.

Second, I agree that *Kelly* suggests we limit our review of the special appearance issue to only the pleadings. However, I question the majority's reliance on *Kelly* as support for a strict, technical pleading requirement in light of the subsequent Texas Supreme Court opinions in *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 212 (Tex. 2020) and *Horton v. Stovall*, 591 S.W.3d 567 (Tex. 2019). Both *St. John* and *Horton* rejected the appellate courts' treatment of cases and issues based on "technicalities."

The majority reads *Kelly* to limit the source of the plaintiff's jurisdictional allegations to the plaintiff's petition and appears to endorse a practice that could require multiple amendments to the petition. While I agree that the plaintiff may

amend his petition to include additional, necessary jurisdictional allegations, *Kelly* is distinguishable because in that case, the third-party plaintiff had failed to plead any jurisdictional facts, and therefore the defendants were entitled to dismissal by proving nonresidency.  I disagree that additional arguments in the plaintiff's response to the special appearance are rendered meaningless because they were not in the petition.  The majority's hyper technical holding does not serve judicial economy and defies the principles enunciated in Texas Rule of Civil Procedure 1, which requires us to obtain a just, fair, and impartial adjudication of the rights of the litigants with expediency and the least expense possible as well as to give the rules a liberal construction, and Rule 45, which requires all pleadings to be construed so as to do substantial justice.  *See* TEX. R. CIV. P. 1, 45.  Such a requirement places form over substance and allows a harmless procedural defect to defeat personal jurisdiction.

In *St. John*, the Texas Supreme Court considered whether the courts of appeals have the authority to order supplemental briefing.  *St. John*, 595 S.W.3d at 212.  In the underlying opinion, this Court concluded that it did not have the authority to order supplemental briefing because the Texas Rules of Appellate Procedure did not allow the court to "sua sponte identify an issue not raised by a party and request additional briefing or reformulate an appellant's argument into one not originally asserted."  *Id.* at 213.  The Texas Supreme Court disagreed with our premise that the

appellants had not raised the ecclesiastical-abstention doctrine in their brief and reversed this Court's judgment. *Id.* at 214.

In *Horton*, the Texas Supreme Court noted that this Court held the appellant did not demonstrate summary judgment was improper and, in fact, had "'not presented anything for [the Court] to review' because the documents she cited as raising a fact issue were not part of the summary-judgment record." *Horton*, 591 S.W.3d at 568. This Court "primarily faulted [the appellant] for citing [ ] documents in the appendix of her appellate brief instead of providing citations to the clerk's record." *Id* "But rather than allowing [the appellant] an opportunity to rectify that briefing defect, [this Court] treated [the appellant's] citations to her appendix as citations to the portion of the appellate record indicated on each appendix document." *Id.* This proved to be a problem for the appellant because, although the appellant "correctly identified the documents she was relying on to support her appellate issues and those documents were actually offered in opposition to [the appellee's] summary-judgment motions, [ ] the appendix [ ] cited [ ] those same documents where they were attached to [the appellant's] motion for continuance and motion for new trial." *Id.* The Texas Supreme Court reversed this Court and noted the appellant cited the right documents, but she had the wrong record citations, and the Texas Supreme Court concluded that this briefing inadequacy was easily correctable. *Id.*

The Texas Supreme Court's subsequent opinions in *St. John* and *Horton* suggest that our review should not be restrained by such a strict, technical application as suggested by the majority. In the context of defining the parties' burdens in a special appearance, I can see no meaningful distinction between the petition and the response to the special appearance. Neither filing must be verified. Furthermore, both the petition and response to the special appearance are submitted under the signature of counsel—subject to Chapter 10 of the Civil Practices and Remedies Code, Texas Rule of Civil Procedure 13, and the Texas Rules of Disciplinary Procedure. *See generally* CIV. PRAC. & REM. §§ 10.001–.006; TEX. R. CIV. P. 13; TEX. R. DISCIPLINARY P. 1.01–17.10. Many Texas lawyers and judges may well question whether *Horton* and *St. John* overrule similar, overly technical applications of the Texas Rules of Civil Procedure—especially when, as here, the key difference is merely the title of the document. Such a restrictive reading would not be consistent with Rule 45's directive that "all pleadings shall be construed so as to do substantial justice." TEX. R. CIV. P. 45. As a result, I disagree with the majority's decision to overrule our prior opinions holding that we may look at the jurisdictional facts pleaded in the plaintiff's petition, as well as the jurisdictional facts alleged in the plaintiff's response to the nonresident defendant's special appearance when determining whether the plaintiff has met his burden to plead sufficient allegations to invoke jurisdiction over a nonresident defendant under the Texas long-arm statute.

Third, I cannot agree with the majority's conclusion because as I noted in fn. 6, we have consistently held that an appellate court looks at the jurisdictional facts pleaded in the plaintiff's petition, as well as the jurisdictional facts alleged in the plaintiff's response to the nonresident defendant's special appearance. The posture of this case is unique because, although the majority changes the law in a way the parties could not have anticipated, the majority affirms the trial court's order based on the new rule it adopts today. The case should be remanded in the interests of justice to allow the parties an opportunity to plead in a manner consistent with the majority's new rule. *See generally, Brown v. Ogbolu*, 331 S.W.3d 530, 537 (Tex. App.—Dallas 2011, no pet.) (appellate court has broad discretion to remand in interest of justice and, as long as there is probability case has not been fully developed, appellate court has discretion to remand rather than render decision); *Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 724 (Tex. App.—Dallas 2003, no pet.).

### (2) Application of the Texas Long-Arm Statute to Saidara

Second, I address Steward Health and Southwest General's contention that the trial court erred when it concluded that the Texas long-arm statute did not extend to Saidara's fraudulent contacts with Texas. They allege Saidara knowingly misrepresented Prospect Medical's intentions about the proposed transaction while he was visiting Texas and claim that "the brunt of [their] injuries . . . were felt in Texas."

The long-arm statute extends Texas courts' personal jurisdiction as far as the federal constitutional requirements of due process will permit. *See, e.g.*, *PHC–Minden*, 235 S.W.3d at 166; *Moki Mac*, 221 S.W.3d at 575. Further, in addition to fraud, Steward Health and Southwest General alleged claims against Saidara for violation of the Texas Harmful Access to Computer Act, misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, and "unfair competition." As previously noted in the discussion of the fiduciary-shield doctrine, all of these are tort claims. Accordingly, I would conclude the Texas long-arm statute extends jurisdiction over Saidara because Steward Health and Southwest General alleged he committed these torts in whole or in part in Texas. CIV. PRAC. & REM. § 17.042(2).

### (3) Application of Minimum-Contacts Analysis to Saidara

Third, I address Steward Health and Southwest General's argument that the trial court erred when it concluded that it did not have specific jurisdiction over Saidara because he had sufficient minimum contacts with Texas. They claim that Saidara purposefully availed himself of the forum. However, they do not address the "arises from or relates to" requirement that lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *See Moki Mac*, 221 S.W.3d at 579.

Steward Health and Southwest General generally argue that "Saidara had substantial contacts with the State of Texas in connection with the transaction at the root of this lawsuit,"—establishing jurisdiction over all of their claims—rather than

contending that specific jurisdiction exists as to Saidara's jurisdictional contacts on a claim-by-claim basis. In support of their argument, they cite this Court's opinion in *Tabasso v. BearCom Group, Inc.*, 407 S.W.3d 822, 830 n.1 (Tex. App.—Dallas 2013, no pet.), for the proposition that "[i]f the court finds specific jurisdiction over a defendant based on one cause of action, the court need not address jurisdiction as to any other causes of action." However, the *Tabasso* opinion was issued on June 26, 2013, and on August 31, 2013, the Texas Supreme Court impliedly disapproved of that proposition in *Moncrief* when it held that specific jurisdiction requires courts to analyze jurisdictional contacts on a claim-by-claim basis. *See* 414 S.W.3d at 150–51.

Based on my review of Steward Health and Southwest General's first amended petition, I would conclude that their claims against Saidara arose from different forum contacts, requiring us to analyze Saidara's contacts on a claim-by-claim basis.[8] *E.g.*, *Moncrief*, 414 S.W.3d at 150 (holding when multiple claims arise out of nonresident defendant's different forum contacts, plaintiff must establish specific jurisdiction for each claim). Accordingly, for purposes of the minimum

---

[8] In his dissenting opinion, Justice Carlyle states that *Moncrief* "did not hold that courts must always analyze minimum contacts on a claim-by-claim basis." I agree that such an analysis is required only when the claims arise from different contacts. However, our agreement diverges with respect to his position that "The plaintiff's claims here[,] [including their statutory claims for misappropriation of trade secrets under the under the Texas Uniform Trade Secrets Act and violation of the Texas Harmful Access by Computer Act,] arise from or are related to the same forum contacts." Footnote 11 provides a more detailed discussion as to our differences of opinion.

contacts analysis, I group Steward Health and Southwest General's claims according to the forum contacts alleged.[9]

### (a) Alleged Statutory Claims—Misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act and Violations of the Texas Harmful Access by Computer Act

Steward Health and Southwest General alleged statutory claims against Saidara for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and violation of the Texas Harmful Access by Computer Act.[10] The operative facts underlying those claims were that Saidara accessed and downloaded their confidential and trade-secret information, which was contained in the virtual clean room, for a purpose other than evaluating the proposed transaction.

In his declaration, which was attached to his special appearance, Saidara testified that:

> At the time [Steward Health and Southwest General] allege[d] [Saidara] inappropriately downloaded confidential information or trade secrets (September 14, 2018), [he] was located in Los Angeles, California. [He] accessed information from the clean room for legitimate purposes related to Prospect [Medical's] due diligence of the [p]roposed [t]ransaction, and solely in [his] capacity as a Clean Team Member for Prospect [Medical] as its VP of Corporate Development.

---

[9] The only issue before this Court is the trial court's order granting Saidara's special appearance.

[10] Chapter 143 of the Texas Civil Practices & Remedies Code creates a civil cause of action when a person or his property has been injured as a result of a violation of Chapter 33 of the Texas Penal Code if the conduct constituting the violation was committed knowingly or intentionally. CIV. PRAC. & REM. § 143.001(a). Section 33.02 of the Texas Penal Code provides that a person commits an offense if the person knowingly accesses a computer, computer network, or computer system without the effective consent of the owner. TEX. PENAL CODE ANN. § 33.02(a).

Saidara does not contest that he downloaded information from the virtual clean room and, on appeal, advises that it is "undisputed that [he] accessed documents related to the [p]roposed [t]ransaction . . . from his computer in . . . California." Rather, he contends that his actions were legitimate and not inappropriate, and that the download occurred in California.

In their response to the special appearance, Steward Health and Southwest General did not attach any evidence to dispute Saidara's statement that the allegedly unauthorized download of information from the virtual clean room occurred in California. Although Steward Health and Southwest General also alleged that, while in Texas, Saidara received some of Southwest General's highly confidential, proprietary, and trade-secret information, including the identities and specialties of Southwest General's most important physicians, they do not argue or otherwise connect that trade-secret information to the trade secrets contained in the virtual clean room.

To support an exercise of jurisdiction, there must be a substantial connection between Saidara's contacts with Texas and the operative facts of the litigation. *See Old Republic*, 549 S.W.3d at 560. The operative facts of the litigation that form the basis of the statutory claims for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and violation of the Texas Harmful Access by Computer Act occurred in California where those trade secrets were allegedly downloaded from the virtual clean room and where the allegedly unauthorized exercise of

dominion and control over those trade secrets occurred.[11]  The alleged contacts that form the basis of these claims did not occur in Texas but outside the forum in California.  *See Info. Servs. Grp., Inc. v. Rawlinson*, 302 S.W.3d 392, 402, 404 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("Even if we assume that Rawlinson ultimately obtained confidential information from the Texas-based servers and gave it to EquaTerra in breach of the various restrictive covenants with the appellants, there is no allegation or evidence that he did so in Texas. . . . On the facts before us, the majority of the focus of any trial would be directed to Rawlinson's alleged wrongdoing in the U.K., not Texas.").

The operative facts of Steward Health and Southwest General's statutory claims for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and violation of the Texas Harmful Access by Computer Act do not involve any Texas contacts by Saidara.  Nor do the Texas contacts form the bases of those causes of action.  Accordingly, I would conclude the trial court did not err when it granted Saidara's special appearance as to Steward Health and Southwest General's statutory

---

[11]  On this issue, I part company with Justice Carlyle's dissent.  Under his analysis, the relevant jurisdictional contacts are those surrounding the improper means used to acquire the access to trade secrets.  And further under Justice Carlyle's analysis, a person who knew of the improper means, but not that the improper means were connected to Texas, could nonetheless be haled into a Texas court based on the unilateral activity of a third party, not his own purposeful availment of the forum.  I would conclude instead, based on Texas Uniform Trade Secrets Act's definition of "misappropriation" that the contacts surrounding "acquisition, disclosure, or use" of trade secret information—turning on what the person "knew or had reason to know" at the time—are dispositive.  See CIV. PRAC. & REM. § 134A.002(3) (defining "misappropriation").  My analysis, in contrast to Justice Carlyle's, focuses on the nonresident's acts by which he acquired, disclosed, or used trade secret information, and the connection of those acts to Texas.  Here, because Saidara downloaded the trade secrets from the clean room on his computer in California, the relevant acquisition, disclosure, or use of the information occurred in California, not Texas.

claims for misappropriation of trade secrets under the Texas Uniform Trade Secrets Act and violation of the Texas Harmful Access by Computer Act. I agree with Justice Carlyle that, at times, the legal system trails behind technological advancement. However, we are duty bound to leave changes in statutory law to the legislature. As an intermediate appellate court we must follow existing law and respect the separation of powers established by our state, trusting the legislature to amend or revise laws as necessary to address technological advancements even if that process is slower than we would like. To that end, I encourage our legislature to reevaluate the Texas Uniform Trade Secrets Act in light of current technological advancements so that our future application of that law does not result in bizarre outcomes.

### (b) Alleged Common Law Claims—Fraud and "Unfair Competition"

Steward Health and Southwest General alleged common law claims against Saidara for fraud[12] and "unfair competition."[13] The operative facts for those claims were that, during a visit to Texas, Saidara made intentional, material

---

[12] To prevail on a common law fraud claim, a plaintiff must prove:

   (1) the defendant made a false, material representation;
   (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;
   (3) the defendant intended to induce the plaintiff to act upon the representation; and
   (4) the plaintiff justifiably relied on the representation, which caused the plaintiff injury.

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019).

[13] Steward Health and Southwest General do not plead anything different from their fraud claim in their unfair competition allegation.

–35–

misrepresentations as to Prospect Medical's intent to purchase Southwest General's assets and, by misleading them, he received some of Southwest General's highly confidential, proprietary, and trade-secret information, including the identities and specialties of Southwest General's most important physicians (Proprietary Information).[14] Then, after Prospect Medical informed Steward Health that it was no longer interested in acquiring the assets of Southwest General, Saidara used that trade-secret information to make it more difficult for Southwest General to market and sell its assets.

The contact that Steward Health and Southwest General alleged established specific jurisdiction was Saidara's trip to Texas to visit Southwest General. During that visit, Saidara received a comprehensive tour of the facility and attended an hours-long meeting with high-level agents of Steward Health, Southwest General, and their investment banker to discuss the acquisition. They also alleged Saidara made numerous telephonic and electronic communications relating to the proposed transaction with Steward Health's and Southwest General's agents in Texas, and while in Texas he received some of Southwest General's Proprietary Information.

In his declaration, which was attached to his special appearance, Saidara testified he made one trip to San Antonio, Texas, in connection with Prospect

---

[14] Although they argue that Saidara "received" trade secrets while in Texas, Steward Health and Southwest General specifically alleged that Saidara toured the Southwest General facility with Summerset and it was Summerset who asked an unusual amount of questions about proprietary Southwest General data and inquired about physician employment arrangements and compensation data.

Medical's due diligence for the proposed transaction. He also stated that he engaged in "conversations [and] activities related to the [p]otential [t]ransaction, in [his] capacity as [the] [v]ice [p]resident of [d]evelopment for Prospect [Medical]." In his special appearance, Saidara argued these conversations occurred while he was outside Texas and, on appeal, he advises that "[i]t is undisputed that [he] . . . sent e-mails from his work computer in . . . California."

I look to Saidara's actual business contacts, rather than what he thought, said, or intended. *See Michiana*, 168 S.W.3d at 791. Although, as Saidara points out, Steward Health and Southwest General do not specify the alleged content of Saidara's misrepresentations, they did specify that Saidara misrepresented Prospect Medical's intent to purchase Southwest General and that he made the misrepresentations while in Texas as well as in telephonic and electronic communications to individuals located in Texas. I would conclude this pleading is sufficient. *Cf. Urban v. Barker*, No. 14-06-00387-CV, 2007 WL 665118, at *5 (Tex. App.—Houston [14th Dist.] Mar. 6, 2007, no pet.) (mem. op.) (torts were not alleged with sufficient specificity to warrant exercise of specific jurisdiction when record fails to show where secret actions took place, where various shareholder agreements were created, and what personal benefit the defendant received from the alleged misrepresentations).

Saidara's contacts with Texas were neither unilateral activities by Steward Health and Southwest General, nor random and fortuitous.[15]  In furtherance of the proposed acquisition of Southwest General's assets by Prospect Medical, Saidara traveled to Texas to tour the Southwest General facility and attended a meeting with high-level agents of Steward Health, Southwest General, and their investment banker to discuss the proposed transaction.  *See Moncrief*, 414 S.W.3d at 153 (personal jurisdiction exists when nonresident agreed to attend business meetings in Texas for purpose of obtaining benefits from those meetings).  And it was during this visit that he allegedly made misrepresentations and received some of Steward Health and Southwest General's alleged Proprietary Information.  *See Jani-King*, 2016 WL 2609314, at *5 (nonresident who travels to Texas and either makes statements alleged to be fraudulent or fails to disclose material information that he is under a duty to disclose is subject to specific jurisdiction in Texas in a subsequent action arising from statement or non-disclosure); *Petrie*, 194 S.W.3d at 175 (nonresident who travels to Texas and makes statements alleged to be fraudulent is subject to specific jurisdiction in Texas); *Stein v. Deason*, 165 S.W.3d 406, 415 (Tex.

---

[15]  I note that Saidara cites *Information Services Group* in support of his proposition that (a) his contacts with Texas were the unilateral activity of Prospect Medical because he visited Texas for the sole benefit of his employer and (b) he did not seek any personal benefit, advantage, or profit from his contacts with Texas, and Steward Health and Southwest General allege only that he misrepresented Prospect Medical's intentions and misappropriated trade secrets for Prospect Medical's use.  *See* 302 S.W.3d at 401. However, the cited proposition appears within a paragraph discussing whether the employee's trips to Texas related in any way to the breach-of-contract claims against him and appears to reference the fiduciary-shield doctrine.  302 S.W.3d at 401.  These arguments go to whether the fiduciary-shield doctrine operates to prevent the exercise of personal jurisdiction over Saidara, and I already stated that I would conclude it does not.

App.—Dallas 2005, no pet.) (nonresident defendant should have understood that his having made representations in Texas could reasonably lead to being haled into court in Texas). Saidara purposefully availed himself of the laws of Texas through his purposeful contacts with Texas. He should have realized the consequences of allegedly making representations and receiving some of Southwest General's Proprietary Information in Texas could include being haled into court in Texas.

To support an exercise of jurisdiction, there must be a substantial connection between Saidara's contacts and the operative facts of Steward Health and Southwest General's claims in the litigation. *See Old Republic*, 549 S.W.3d at 560. The operative facts of the litigation are those facts the trial court will focus on to prove Saidara's liability. *See Jani-King*, 2016 WL 2609314, at *5. Saidara's alleged misrepresentations relating to the proposed transaction and acquisition of some of Southwest General's Proprietary Information while in Texas are at the core of Steward Health and Southwest General's fraud and "unfair competition" claims. As a result, the contacts showing purposeful availment are operative facts of the litigation for those claims.

I would conclude that with respect to Steward Health and Southwest General's common law claims for fraud and "unfair competition," Saidara had minimum contacts with Texas sufficient to support the exercise of specific jurisdiction.[16]

---

[16] I express no opinion as to the merits of the claims against Saidara.

### (4) Application of Fair Play and Substantial Justice

Fourth, because I would have concluded that minimum contacts with Texas exist as to Steward Health and Southwest General's common law claims for fraud and "unfair competition," I must determine whether the exercise of jurisdiction as to those claims comports with traditional notions of fair play and substantial justice. Steward Health and Southwest General argue the distance between Saidara's residence in California and Texas is reasonable, Texas has the clearest interest in providing a forum for the resolution of this dispute, Saidara committed a tort in whole or in part in Texas, their principal places of business are in Texas, the subject of the proposed transaction was a Texas hospital, and judicial economy is promoted because the claims against Prospect Medical and Prospect Health will be tried in Texas. Saidara responds that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice because his minimal contacts with Texas were not for his own benefit but for the benefit of his employer. Again, Saidara's argument goes to the applicability of the fiduciary-shield doctrine, which does not apply in this case.

It was Saidara's burden to present a compelling case that jurisdiction was unreasonable. *See Jani-King*, 2016 WL 2609314, at *8. Despite his burden, Saidara presented no argument or evidence to support the trial court's conclusion "that the exercise of personal jurisdiction over [] Saidara would not comport with traditional notions of fair play and substantial justice." Specifically, in his special appearance,

Saidara made no argument with respect to the requirement that the exercise of personal jurisdiction over a nonresident defendant must comport with traditional notions of fair play and substantial justice, although he did make a single reference to that requirement in his recitation of the case law. Further, in his declaration, Saidara did not address any of the five factors used to determine whether the assertion of jurisdiction comports with traditional notions of fair play and substantial justice. At most, he stated that he resides and works in California and he does not regularly visit Texas.

Nevertheless, I will evaluate Saidara's contacts in light of the five factors to determine if the assertion of jurisdiction comports with traditional notions of fair play and substantial justice. First, I evaluate Saidara's burden. The record shows that Saidara lives and works in California. While subjecting Saidara to suit in Texas certainly imposes a burden on him, the same can be said of all nonresident defendants. *See id.* at *6. And distance alone cannot defeat jurisdiction. *See id.* Further, Saidara, a corporate officer of Prospect Medical, has already shown his willingness to travel to Texas by traveling to San Antonio to conduct due diligence with respect to the proposed transaction. *See id.* I cannot conclude that further travel to Texas will be an unreasonable burden to Saidara.

Second, I evaluate Texas's interest in adjudicating the dispute. Steward Health and Southwest General have alleged that Saidara committed torts while in Texas. This implicates a serious state interest in adjudicating the dispute. *See id.*

–41–

Finally, I evaluate Steward Health and Southwest General's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution to disputes, and Texas's common interest in furthering fundamental, substantive social policies. The interests of Steward Health and Southwest General in obtaining convenient and effective relief clearly weigh in favor of Texas as they both have their principal place of business in Texas. *See id.* Further, judicial economy is promoted by adjudicating Steward Health and Southwest General's claims against Saidara in Texas because their claims against Prospect Medical and Prospect Health, which are based on the same operative facts, will also be adjudicated in Texas.[17]

I would conclude the trial court erred when it concluded that "the exercise of personal jurisdiction over [] Saidara would not comport with traditional notions of

---

[17] Saidara states in his appellee's brief that the Massachusetts choice-of-law and mandatory forum provisions contained in the confidentiality agreement are "not dispositive" but argues they are "relevant and reinforce the conclusion that Texas courts lack jurisdiction over [him]." Although Saidara includes the confidentiality agreement in the appendix to his brief, that document is attached to Prospect Medical's answer and Prospect Medical was not a party to the special appearance proceedings. While I am aware that the trial court's order generally states that it is "[b]ased on the parties' pleadings," common sense dictates the trial court was referring to the parties to—Steward Health, Southwest General, and Saidara—and pleadings filed in the special appearance proceeding, not all the parties to and pleadings filed in the underlying lawsuit. *See generally De Prins v. Van Damme*, 953 S.W.2d 7, 18–19 (Tex. App.—Tyler 1997, pet. denied) (special appearance hearing is separate and distinct from any hearing on merits of underlying lawsuit). Accordingly, Saidara cannot now rely on the confidentiality agreement's provisions to support the trial court's order. *Cf. Ugwa v. Ugwa*, No. 05-17-00633-CV, 2018 WL 2715437, at *2 (Tex. App.—Dallas June 6, 2018, no pet.) (mem. op.) (documents attached to pleadings are not evidence unless offered and admitted by the trial court). For these reasons, I cannot agree with Part I of Justice Schenck's concurring opinion, which concludes that the choice-of-law and forum selection provisions contained in the confidentiality agreement attached to Prospect Medical's answer demonstrate the parties did not expect any litigation between them to take place in Texas and therefore, the exercise of personal jurisdiction over Saidara does not comport with traditional notions of fair play and substantial justice.

fair play and substantial justice" with respect to Steward Health and Southwest General's common law claims against Saidara for fraud and "unfair competition."[18]

## III. CONCLUSION

I would reverse in part and affirm in part the trial court's order granting Saidara's special appearance, and remand the case for further proceedings consistent with my concurring and dissenting opinion.

Finally, I note that the majority's opinion in this en banc interlocutory appeal creates the precise situation we sought to remedy in *Chakrabarty v. Ganguly*, 573 S.W.3d 413, 416–17 (Tex. App.—Dallas 2019, no pet.) (en banc). In *Chakrabarty*, this Court sitting en banc overruled its prior authority in order to bring it within the "long and unbroken line of authority to the contrary." *Id.* at 417. In contrast, in this interlocutory appeal, the majority acknowledges that several of this Court's opinions, as well as opinions from most of the other courts of appeals, state that courts may consider facts alleged in a response to a special appearance as well as the plaintiff's petition to determine if the plaintiff pleaded sufficient allegations to invoke jurisdiction under the Texas long-arm statute. Nevertheless, the majority

---

[18] The fundamental concern raised by the reasoning in Part I of Justice Schenck's concurring opinion is that the analysis is self-contradicting and addresses the issues in this appeal with too broad of a brush. On the one hand, he concludes that consideration of jurisdictional allegations in a response filed by a party to the special-appearance proceeding is inappropriate—based on a very narrow interpretation of Rule 120a(3) that excludes a party's response to a special appearance from the definition of "pleading" and, thus, limits the response's purpose solely to the introduction of evidence. Yet, on the other hand, Justice Schenck concludes the exercise of personal jurisdiction over Saidara does not comport with traditional notions of fair play and substantial justice—based on a very broad interpretation of "pleadings" that allows courts to consider attachments to the pleadings of parties to the litigation who are not parties to the special-appearance proceedings.

overrules this Court's precedent to that effect. I believe that where the courts of appeals have long agreed and the Texas Supreme Court has repeatedly denied the petitions for review in such cases it is not for one court of appeals to break with that precedent and create a conflict in the law where one did not previously exist. In these types of situations, changes to widely accepted precedent among the courts of appeals should be made by the Texas Supreme Court.

/Leslie Osborne//

190274f.p05

LESLIE OSBORNE
JUSTICE

Pedersen, J., joins.
Molberg, J., joins with respect to sections I and II(A), (B), (C)(1)–(2), (3)(b), and (4) only. He does not join as to section II(C)(3)(a).